ELECTRIC WELDING COMPANY, Limited, *vs.* FRANK E. FITZ & others.

SAME *vs.* NATHANIEL S. SIMPKINS & others.

Suffolk. Barnstable. March 24, 1913. — June 18, 1913.

Present: RUGG, C. J., MORTON, LORING, SHELDON, & DE COURCY, JJ.

*Limitations, Statute of. Executor and Administrator. Corporation,* Foreign, Liability of stockholder.

In a suit in equity by a foreign corporation under R. L. c. 141, §§ 26, 27, against the devisees and legatees under the will of a deceased subscriber for shares of stock of the plaintiff, for the collection of a call of £1 a share, it appeared that the call upon the subscribers had not been made by the plaintiff's directors until after the settlement of the estate of the deceased subscriber and after the expiration of the two years period of limitation, but that, before the expiration of such period of limitation and before the estate was fully administered, the public subscription for the stock of the plaintiff had failed and the necessity for and probability of a call upon the actual subscribers must have been apparent to the plaintiff's directors, and that at that time the maximum remaining liability of the deceased subscriber was £4 a share. *Held,* that under R. L. c. 141, § 13, the plaintiff's claim could legally have been presented to the Probate Court before the estate was fully administered as one that might become justly due from the estate, for the satisfaction of which the executor might have been ordered to retain in his hands sufficient assets, and that therefore the defendants could not be made liable for the claim under §§ 26, 27.

TWO BILLS IN EQUITY, filed in the Supreme Judicial Court on February 9, 1912, by a corporation organized under the laws

of the United Kingdom of Great Britain and Ireland, to enforce the alleged liability under R. L. c. 141, §§ 26, 27, of the respective devisees and legatees under the wills of two deceased subscribers for shares of the capital stock of the plaintiff, for a payment of £1 a share in accordance with a call made by the plaintiff's directors.

The defendants in each case demurred to the bill. The cases were heard by *Morton, J.,* who sustained the demurrers, and made final decrees dismissing the bills. The plaintiff appealed. The material facts as alleged in the bills are stated in the opinion.

*A. L. Fish,* for the plaintiff.

*E. H. Talbot,* (*H. C. McKenna* with him,) for the defendants Frank E. and Fanny Slade Fitz.

*A. M. Chandler,* for the defendants Charles S. Dana and Emma Jenny Fitz.

*G. S. Selfridge,* for the defendants Nathaniel Stone Simpkins and others.

*R. Spring,* for the defendant Blanchard.

*W. G. Thompson & R. Spring,* by permission of the court, submitted a brief on behalf of Royal Robbins and others.

RUGG, C. J. The plaintiff, an English corporation, seeks to recover a call for a payment of £1 per share upon stock subscribed for by Eustace C. Fitz and John Simpkins respectively, both now deceased, in these suits against their devisees and legatees. Their estates were settled in probate courts in this Commonwealth before the call for payment upon the stock was made. The point to be decided is whether the devisees and legatees of these decedents are liable under R. L. c. 141, §§ 26, 27. The substance of these sections, so far as now material, is that a creditor after the settlement of an estate and whose right of action accrues after the expiration of the special statute of limitations "and whose claim could not legally be presented to the Probate Court," may recover from the legatees or heirs. It is plain upon the allegations of the bills that the rights of action did not accrue until after the settlement of the estates. The vital question is whether the claims legally could have been presented to the Probate Court. The answer depends upon R. L. c. 141, § 13, which provides in such case that a creditor may present his claim at any time before the estate is fully administered to the Probate Court, and if

that "court finds that such claim is or may become justly due from the estate," it shall order the executor or administrator to retain in his hands sufficient to satisfy the same. The precise point is whether the plaintiff's claim, before these estates were fully administered, properly could have been described as one which "may become justly due."

The liability of the estates of these decedents was not a debt upon which action could be brought until a call was actually made by the directors of the plaintiff company. The shareholders' liability was to pay the balance of the uncalled capital when and not until a call was made. *In re Russian Spratts Patent, Ltd.* [1898] 2 Ch. 149. *Alexander* v. *Automatic Telephone Co.* [1899] 2 Ch. 302. The maximum remaining liability of the decedent subscribers was £4 per share at the time the call for the £1 per share here in suit was made. The statute in question has been before the court for construction and application in several cases. It has been said that the whole "statute must be construed reasonably. It cannot have been intended to enable any one, who has an outstanding contract made by a deceased person, to suspend the settlement of the estate indefinitely, without regard to the probability of anything becoming due upon the contract, and when it still is impossible for the Probate Court to form any estimate of what amount should be retained as 'sufficient to satisfy the same,'" *Bullard* v. *Moor,* 158 Mass. 418, 424; and that "the settlement of the estates of deceased persons should not be unnecessarily delayed." *Forbes* v. *Harrington,* 171 Mass. 386, 391. Yet it also has been said that "the language of the statute plainly implies that there may be at least some uncertainty as to whether or not the debt may be justly due," *Peabody* v. *Allen,* 194 Mass. 345, 347; and that its "legal effect is to hold the executor or administrator answerable for the claim beyond the special statute limitation of two years, and extends the lien upon the real estate of the deceased for the satisfaction of the claim," *Bassett* v. *Drew,* 176 Mass. 141, 145; and that its purpose is not to enable the Probate Court to determine how much is due nor to collect the claim if it is not yet due. *Converse* v. *Nichols,* 202 Mass. 270. In the case at bar the public subscription for stock of the plaintiff had failed, and the necessity for and the probability of a subsequent call or calls was better within

the knowledge of the plaintiff and its directors than of anybody else. The obligation to pay assessments upon the stock was definite as to the maximum amount, and whether any call should be made and how much it should be depended upon the action of the directors. Whatever uncertainty existed was one over which the plaintiff's directors had control. It is not practicable to attempt to lay down a general rule which shall govern all cases. As applied to the case at bar, the determining factor under the statute is not the uncertain or contingent character of the claim against the estate, but whether its nature is such that the debtor can present to the Probate Court with a reasonable degree of intelligence a statement of a liability having limits as to amount, some foundation in law and a fair basis of fact in its support. The knowledge which directors may be presumed to have of the condition of their company is such that they could have presented to the Probate Court such a statement of the probable necessity of making a call for payment in whole or in part of unpaid subscriptions to stock. The cases from other jurisdictions relied upon by the plaintiff construe statutes materially different from that before us. The language of our statute contemplates some degree of contingency and uncertainty in the character of the claims which may be found likely to be due. This case is not distinguishable in principle from *Converse* v. *Nichols,* 202 Mass. 270.

*Decree in each case affirmed with costs.*