ANNA E. McQUESTEN *vs.* CHARLES E. SPALDING & trustee.

Essex.   October 16, 1918. — November 26, 1918.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Limitations, Statute of.   Bills and Notes.   Contract,* Validity.

In an action on a promissory note, in which the defendant pleaded the statute of
limitations, it appeared that the note contained a promise to pay to the order
of the plaintiff $2,500 "on demand with interest semi-annually" and that on
the note was the following indorsement signed by 'the defendant, who was the
maker: "This is a preferred .note to be paid regardless of any future proceed-
ings in Bankruptcy on demand, or at the settlement of my mother's (M A S)
estate." The defendant's mother died thirteen years after the date and de-
livery of the note. The action was brought seven months after the mother's
death, when her estate was ripe for settlement. No payment of principal or
interest ever was made on the note and no demand upon the defendant for
payment ever had been made before the action was brought. *Held*, that, in
addition to the promise to pay the principal sum on demand, alternative prom-
ises of payment were made, one to pay on demand regardless of any future
proceedings in bankruptcy and the other to pay on the settlement of the de-
fendant's mother's estate.
It also was *held* that the plaintiff had the right to elect upon which of these
promises to rely, and that he had elected to rely on the promise of the defend-
ant to pay on̄ the settlement of his mother's estate, so that 'the statute of
limitations began to run only from the time of such settlement.
In the same action it was *held* that the instrument sued upon, although not a
negotiable note, was clearly a valid contract.
In the action above described there was nothing to show that the defendant ever
had been subject to proceedings in bankruptcy, and it was *held* that it was not
necessary to determine the precise effect of the promise to pay upon demand
as "a preferred note to be .paid regardless of any future proceedings in bank-
ruptcy," because, whatever the nature of this promise might be, it was not so
illegal or so contrary to public policy as to vitiate the entire instrument and
that its presence did not destroy the binding character of the contract sought
. to be enforced.

CONTRACT upon the instrument in writing which is quoted
in full in the opinion.  Writ dated October 6, 1916.

The defendant's answer contained, among other things, an
allegation "that the cause of action mentioned in the plaintiff's
writ did not accrue within six years before the suing out of the
plaintiff's writ."  An amendment to the answer alleged that the

promise contained in the indorsement was an agreement to give a preference to the plaintiff in the event of any future proceedings in bankruptcy and was void as against public policy and in violation of the bankruptcy act of 1898 and amendments thereto.

The case was tried before *N. P. Brown, J.,* without a jury. At the close of the plaintiff's evidence, the defendant offering no evidence, the plaintiff made a motion asking the judge to order a verdict for her for the reason that upon all the evidence the jury would not be warranted in finding any other verdict. The judge denied this motion. The defendant then made a motion asking the judge to order a verdict for him. The judge allowed this motion and ordered a verdict for the defendant. The plaintiff alleged exceptions.

*I. W. Sargent,* for the plaintiff.

*W. W. Clarke,* for the defendant.

RUGG, C. J. This is an action of contract begun on October 6, 1916, to recover upon a written instrument of the tenor following:

"Nashua, N. H., February 19th, 1903.

For value received I promise to pay to the order of Anna E. McQuesten twenty-five hundred dollars on demand with interest semi-annually.

Chas. E. Spalding.

$2,500                                                  Ida L. Spalding."

Indorsement.

"This is a preferred note to be paid regardless of any future proceedings in Bankruptcy on demand, or at the settlement of my mother's (Mary A. Spalding) estate.

Chas. E. Spalding."

The chief contention of the principal defendant is that the plaintiff's action is barred by the statute of limitations.

There was evidence tending to show that the plaintiff lent to the defendant Charles E. Spalding, at his solicitation, $2,500, and received from him the instrument just quoted, that no payment of principal or interest had been made upon it and no demand had ever been made upon the defendant for payment before the present action; that Mary A. Spalding, the mother of the defendant, died on February 28, 1916, and that her estate was ripe for settlement. If this testimony was believed, the plain-

tiff was entitled to recover.  It therefore was error to direct a verdict for the defendant.

The fundamental rule in the interpretation of all written instruments is to ascertain the intent of the parties from all the language employed, attributing appropriate force to every word used.  Effect must be given to that intent unless prevented by some positive rule of law.  Applying that rule to the instrument here in suit, its meaning is not open to doubt.  The entire instrument, including the indorsement, must be scrutinized in order to discover its true signification.  While the main body of the instrument standing alone is a simple promissory note payable on demand, its nature in this regard is modified and supplemented by the subsequent writing.  The indorsement signed by the defendant is an unequivocal statement to the effect that in addition to the principal sum being payable on demand, alternative promises of payment are made, one to pay on demand regardless of any future proceedings in bankruptcy, and the other to pay on the settlement of his mother's estate.  The promise taken in its entirety is to make payment at any one of three different times, (1) on demand, (2) on demand after proceedings in bankruptcy without being affected thereby, and (3) on the settlement of his mother's estate.  The selection of the time of payment is left wholly to the volition of the plaintiff in accordance with the particular promise upon which she elects to rely.  While such an instrument is not a negotiable note, its validity as a contract is not open to doubt.

The statute of limitations has not run against the plaintiff.  Ordinarily the statute of limitations begins to run when the right of action accrues.  But that principle has no application as a bar to the facts here disclosed, because, although, if the plaintiff had chosen to exercise that option, she might have brought an action in 1903, yet she expressly chose not to exercise that option but to rely upon the other promise of the defendant to pay on the settlement of his mother's estate.  The debt was not due absolutely and unequivocally on demand.  It was thus due only in the event that the plaintiff exercised that option.  It was her right and privilege to exercise the option that it should become payable on the settlement of the estate of the defendant's mother.  There is nothing in the law which prevents the plaintiff

from relying upon that promise of the defendant. That promise did not mature and become operative until the happening of the event upon which it was conditioned, namely, the settlement of the mother's estate. Manifestly with reference to that due date, the statute of limitations has not run.

This conclusion is in harmony with the reasoning of *Mahoney* v. *Fitzpatrick*, 133 Mass. 151. It is supported by direct decisions in other jurisdictions. *Harris* v. *Townshend*, 101 Miss. 590. *Blick* v. *Cockins*, 131 Md. 625, 630, 631. *Sullivan* v. *Ellis*, 135 C. C. A. 366. The case of *Brown* v. *Hitchcock*, 69 Vt. 197, somewhat relied on by the defendant, appears to have turned on a question of pleading and not to be an authority contrary to the conclusion here reached.

It is not necessary to determine the precise effect of the promise to pay upon demand as a preferred note regardless of future proceedings in bankruptcy. There is nothing to show that the defendant ever has been subjected to proceedings in bankruptcy. At most it was an attempt to lift in advance the bar that might arise through a discharge in bankruptcy by continuing its force and validity as a binding obligation, or perhaps to create a preference for the debt if proved in bankruptcy proceedings. Without undertaking to determine the effect of such a promise, see *Lerow* v. *Wilmarth*, 7 Allen, 463, it is enough to say that there is nothing in its nature so illegal or contrary to public policy as to vitiate the entire instrument. Whatever its nature may be, its presence does not destroy the binding character of the contract here sought to be enforced.

*Exceptions sustained.*