JAMES CANTOR *vs.* CARYL W. NEWTON & others
(and twenty-two companion cases).

Suffolk. October 14, 1976. — December 17, 1976.

Present: HALE, C.J., GRANT, & BROWN, JJ.

*Executor and Administrator,* Statute of limitations. *Guaranty. Sub-ordination. Bills and Notes,* Construction, Due date, Demand note. *Words,* "On demand."

The liability of a guarantor of promissory notes payable on demand attached at the time of their delivery, and an action could not, therefore, be maintained against the executrix of the guarantor's estate after the one-year period set forth in G. L. c. 197, § 9, had elapsed. [690-691]

---

The liability of a guarantor of promissory notes payable "on demand, with 30 days notice" attached at the time of their delivery, and an *action could not, therefore, be maintained against the executrix of the guarantor's estate after the one-year period set forth in G. L. c. 197, § 9, had elapsed.* [691-693]
Holders of notes which became due after all the assets of the guarantor's estate had been distributed were entitled to proceed against "legatees of the deceased" pursuant to G. L. c. 197, § 28. [693-696]
Holders of notes which were senior to certain subordinated notes were not entitled to have paid to them all amounts which had been paid to the holders of the subordinated notes out of the estate of the guarantor of the subordinated notes where none of the senior notes had been guaranteed either by the guarantor of the subordinated *notes or by the subordinated noteholders.* [696-699]

TWENTY-TWO BILLS IN EQUITY filed in the Superior Court on the following dates: January 26, 1971, January 28, 1971, January 29, 1971 (two), March 12, 1971 (eight), March 15, 1971, June 29, 1971 (two), July 7, 1971, July 16, 1971, July 23, 1971, September 27, 1971, September 28, 1971, and September 29, 1971 (two).

The suits were heard by *Ronan, J.,* on a master's report.

CIVIL ACTION commenced in the Superior Court on July 26, 1974.

The case was heard by *Nelson, J.*

*Joseph J. Hurley (Mary M. Logalbo* with him) for Caryl W. Newton & others.

*Ralph Davis* for James Cantor.

*C. Peter R. Gossels* for Helen Sears & others, trustees.

*Stephen S. Young* for Anita C. Newman & another.

*Carlton W. Spencer (Joseph F. Ryan* with him) for Malden Trust Company & others.

GRANT, J. These are twenty-three separate actions brought in the Superior Court to recover the unpaid balances, with interest, due on forty-one various promissory notes made either by the firm of Roberts & Co. (Roberts) or by Investment Funds Inc. (IFI) during the period from October 2, 1961, through August 11, 1970. The claims of all the plaintiffs depend, directly or derivatively, on the written guaranties of thirty-one of those notes by one Arnold Goodman, who, at the times of his guaranties, was a partner in Roberts and the treasurer of and a stock-

holder in IFI. All twenty-three cases have been consolidated for purposes of appeal.

Each note falls into one of four distinct groups: (A) interest bearing (due monthly) notes of Roberts which were payable "on demand"; (B) interest bearing (due monthly) notes of Roberts or of IFI which were payable "on demand, with 30 days notice"; (C) long term (three or five-year) registered subordinated notes of IFI on which interest payments were due periodically (monthly or quarterly); or (D) short term (one month to one year) notes of IFI payable to the order of banks and trust companies on which interest had been discounted and which were senior to the subordinated notes in group C. Goodman personally guaranteed the payment of all the notes in groups A, B and C.[1] The notes in group D were not made until after Goodman's death.

Goodman died on July 25, 1967, at a time when both Roberts and IFI were still solvent. By decree of the Probate Court for Suffolk County entered on September 7, 1967, Goodman's widow was appointed the executrix of his will. She gave bond for the performance of her duties on that day.[2] On September 12, 1968, the executrix distributed the residue of Goodman's estate to herself and a bank as the cotrustees named in his will of two trusts of which the widow is the beneficiary for her life.[3] Roberts appears to have remained solvent until at least June 30, 1969, when one Moffie became the sole owner of its assets.[4]

---

[1] The record leaves room for doubt as to whether Goodman did in fact guarantee payment of one note in group B (No. 93124 Equity), but the case has been argued on the basis that he did so. In the view we take nothing turns on the question whether Goodman did or did not guarantee every note in groups A and B.

[2] This fact cannot be gleaned from any of the records, but it is agreed to in the briefs.

[3] The will has not been made a part of any of the records; our knowledge of its contents comes from descriptions of its provisions which are found in the admitted allegations of various pleadings.

[4] All the notes of IFI in group D which were made after June 30, 1969, appear to have been executed by Moffie as president of IFI.

The periodic interest due November 1, 1970, on the notes in group C was not paid, and it is clear that there were defaults on all the notes in all four groups on or about the same date.[5] No demand for payment of the principal or interest due on any of the notes appears to have been made on Goodman's executrix until after that date.[6] At various undisclosed times during the period from September 20, 1968, through December 14, 1973, distributions of principal and income aggregating approximately $168,000 were made to Goodman's widow from the residuary trusts under Goodman's will.

During the period from December 9, 1970, through February 3, 1971, various of the holders or assignees of the notes in groups A, B, and C filed petitions in the Probate Court under the provisions of G. L. c. 197, § 13, as in effect prior to St. 1976, c. 515, § 18,[7] for the retention by the executrix of assets of Goodman's estate believed to be still in her possession as executrix.[8] On December 28, 1970, the widow filed her first and final account as executrix, disclosing thereby that she had already distributed the residue of Goodman's estate to his testamentary trustees on September 12, 1968. That account was allowed by a judge of the Probate Court on April 29, 1971. On May 10, 1971, all the aforementioned petitions were dismissed "without

---

[5] IFI, Moffie and Goodman's co-guarantor of the notes in groups A, B and C were all adjudicated bankrupt in 1971.

[6] The records are silent on the question whether the executrix-widow had any prior knowledge of any of Goodman's guaranties.

[7] "A creditor of the deceased, whose right of action does not accrue within one year after the giving of the administration bond . . . may present his claim to the probate court at any time before the estate is fully administered; and if, upon examination thereof, the court finds that such claim is or may become justly due from the estate, it shall order the executor or administrator to retain in his hands sufficient assets to satisfy the same . . . ."

[8] There were seventeen such petitions, covering all the notes in group A and the majority of the notes in groups B and C. The cases have been argued to us on the basis that all the notes in the latter two groups were covered by such petitions. In the view we take of these cases, it makes no difference whether any such petitions were filed.

prejudice to pursuit of any right the petitioner[s] may have, apart from the provisions of G. L. c. 197, § 13." The dismissals appear to have been based on the fact that there were no longer any assets of Goodman's estate in the hands of the executrix which she could be ordered to retain for the satisfaction of the respective claims of the petitioners.

## A. THE NOTES PAYABLE "ON DEMAND".

There are three such notes, all made by Roberts on November 10, 1961, and guaranteed by Goodman on that date. No action was brought on any of these notes against Goodman's executrix during the year following her giving bond. The notes were first put in litigation in the Superior Court in late 1970, following the Roberts-IFI collapse, by a bill in equity[9] by which those claiming to be entitled to payment of the notes sought to hold Goodman's testamentary trustees and his widow[10] liable under the provisions of G. L. c. 197, §§ 28[11] and 29,[12] by reason of Goodman's guaranties and the distributions of his assets to those defendants. The only defence now relied on is that

---

[9] No. 93731 Equity.

[10] Others were named as additional defendants; they are either persons who are now bankrupt (see note 5, *supra*) or remaindermen under the testamentary trusts to whom none of Goodman's assets have yet been distributed.

[11] "After the settlement of an estate by an executor or administrator, and after the expiration of the time limited for the commencement of actions against him by the creditors of the deceased, the heirs, next of kin, devisees and legatees of the deceased shall be liable in the manner provided in the following sections for all debts for which actions could not have been brought against the executor or administrator, and for which provision is not made in the preceding sections."

[12] "A creditor whose right of action accrues after the expiration of said time of limitation, and whose claim could not legally be presented to the probate court . . . may, by action commenced within one year next after the time when such right of action accrues, recover such claim against the heirs and next of kin of the deceased or against the devisees and legatees under his will, each of whom shall be liable to the creditor to an amount not exceeding the value of the real or personal property which he has received from the estate of the deceased . . . ."

the plaintiffs "failed to prosecute ... [their] claims against the estate of ... Goodman within the period provided by the General Laws." The trustees and the widow have appealed from a final decree which, in the parts here relevant, purports to determine their liability for the unpaid principal amounts of the notes, with interest.

The portions of that decree relevant to these notes were in error and must be struck. "An indebtedness evidenced by a demand note becomes due as soon as the note is delivered. An action for its collection may be maintained without any previous demand." *Bielanski* v. *Westfield Sav. Bank*, 313 Mass. 577, 580 (1943). G. L. c. 106, § 3-122 (1) (*a*). Goodman's liability as guarantor of these notes (see G. L. c. 106, § 3-416 [1]) attached at the time of their delivery (*National Shawmut Bank* v. *Fitzpatrick*, 256 Mass. 125, 131 [1926]), and actions could have been brought on them against Goodman's executrix at any time during the one-year period set out in G. L. c. 197, § 9, as appearing in St. 1954, c. 552, § 1.[13] See *Nochemson* v. *Aronson*, 279 Mass. 278, 279, 281 (1932). Contrast *First Nat'l Bank* v. *Nichols*, 294 Mass. 173, 178, 186 (1936). None of these particular plaintiffs was in a position in which action "could not have been brought against the ... [executrix]" (G. L. c. 197, § 28), nor was any of them "[a] creditor whose right of action accrue[d] after the expiration" (G. L. c. 197, § 29) of the one-year period in G. L. c. 197, § 9. All three notes were plainly barred.

### B. The Notes Payable "On Demand, with 30 Days Notice".

There are numerous such notes (one made by IFI and the rest by Roberts), each bearing Goodman's guaranty.[14]

---

[13] "Except as provided in this chapter, an executor or administrator shall not be held to answer to an action by a creditor of the deceased which is not commenced within one year from the time of his giving bond for the performance of his trust...."

[14] But see note 1, *supra.* It seems that some of the guaranties were affixed on dates subsequent to the deliveries of the notes. Nothing turns on the dates of the guaranties.

No action was brought against his executrix during the year following her giving bond. The general timing and theory of the bills in equity by which the holders or assignees of these notes sought to fasten liability on Goodman's trustees and his widow were the same as in part A of this opinion; the defence was the same. The same defendants have appealed from final decrees purporting to determine their liability for the unpaid principal amounts of the notes, with interest.

The parties have urged conflicting interpretations of the words in these notes which made them payable "on demand, with 30 days notice," although everyone appears to be in agreement that the question is one of ascertaining the intentions of the parties from the language used by them on the faces of the notes. See *Loring* v. *Gurney*, 5 Pick. 15, 17 (1827); *Heywood* v. *Perrin*, 10 Pick. 228, 231 (1830); *Newman* v. *Kettelle*, 13 Pick. 418, 419 (1833); *Franklin Sav. Inst.* v. *Reed*, 125 Mass. 365, 366, 367 (1878); *McQuesten* v. *Spalding*, 231 Mass. 301, 302-303 (1918); *Merrimack River Sav. Bank* v. *Higgins*, 89 N.H. 154, 156 (1937).

We are persuaded on the authority of *Knapp* v. *Greene*, 79 Hun 264 (N.Y. 1894), and *Environics, Inc.* v. *Pratt*, 50 App. Div. 2d 552 (N.Y. 1975), that the quoted language of these notes placed no limitation on their holders' making demands for payment on Goodman's executrix and that the only restriction was that the holders were required to allow the executrix a period of thirty days following their demands within which to pay the notes before actions could be commenced against her for nonpayment. The note in the *Knapp* case was payable "[on] demand, after three months' notice." The court said: "The defendant's liability, as distinguished from the plaintiff's right to sue, did not depend upon the performance of a condition precedent . . . . The notice required . . . was a condition of maintaining the action and not an essential part of it, upon which the inception of a right is based and the cause of action founded . . . The notice was for the benefit of the debtor, not for the benefit of the creditor. The debtor could

at any time waive the notice and tender the debt and interest. The real object was to give the debtor a reasonable time to pay the debt... In other words, the debt was due, but the creditor agreed to limit his right to sue presently... The plaintiff contends that the note should be construed as though it read 'three months after demand,' and as though the demand and notice were conditions precedent to the existence of a cause of action. If that be so, then the holder of the note could postpone his right of action indefinitely, while the maker could never stop the running of interest or compel the acceptance of payment" (79 Hun at 265-266). It was held that the note in question was barred by the plaintiff's failure to make any demand within the applicable period of limitations. The same result was reached in the *Environics* case, in which the note was payable "thirty days after demand" and it was held that "[t]he right to make demand arose upon the making of the note and plaintiff's cause of action is, therefore, time barred" (50 App. Div. 2d at 553).

Based on the reasoning in those two cases, which we think entirely correct, there was a period of eleven months following the executrix's giving bond in these cases[15] within which the holders or assignees of the notes in this group could have brought actions against the executrix to recover the amounts of principal and interest due them. We hold, for the same reasons expressed in the concluding paragraph of part A of this opinion, that the actions on these notes were also barred. The decrees relative to these notes were in error and will be reversed.

## C. THE SUBORDINATED NOTES OF IFI.

A blank sample of a note in this group has been reproduced in the appendix hereof.[16] Under the terms of all the actual notes no part of the principal of any of them was

---

[15] The twelve months allowed by G. L. c. 197, § 9, as then in effect, less the thirty-day period provided for in the notes.

[16] The numbers appearing in the brackets have been inserted for the purpose of facilitating the discussion in part D of this opinion.

due or payable until a date more than one year after the executrix gave bond. The periodic interest payments due on all the notes were made by IFI for a period of more than three years following the giving of bond. It is obvious that no cause of action in favor of the holder of any of these notes accrued within the one-year period of limitations found in G. L. c. 197, § 9, and thus that no action could have been brought on any of the notes against the executrix as such. The holders of the notes in this group have proceeded against Goodman's testamentary trustees and his widow[17] under the provisions of G. L. c. 197, §§ 28 and 29 (notes 11 and 12, supra), by reason of Goodman's guaranties and the distributions of his assets to them. The defence was the same as that with respect to the notes in groups A and B. The trustees and the widow have appealed from final decrees determining that they are liable for the unpaid principal amounts of the notes, with interest.

The defendants' principal contention is that the plaintiffs should have proceeded in timely fashion under the provisions of G. L. c. 197, § 13 (note 7, supra). See Grow v. Dobbins, 124 Mass. 560, 561 (1878); Pratt v. Lamson, 128 Mass. 528, 529-530 (1880); Hubbard, petitioner, 185 Mass. 22, 23 (1904); Anderson v. Metropolitan Stock Exch. 198 Mass. 76, 81 (1908); Converse v. Nichols, 202 Mass. 270, 272 (1909); Electric Welding Co. v. Fitz, 215 Mass. 315, 317-318 (1913). There is no merit to the contention. We need not explore all the ramifications of the words "before the estate is fully administered" which appear in § 13 (see Converse v. Nichols, 202 Mass. at 275, 276 [1909]; Thompson v. De Visser, 219 Mass. 40, 42-43 [1914]; Thompson v. Owen, 249 Mass. 229, 233 [1924][18])

---

[17] See notes 5 and 10, supra.

[18] But see Downer v. Squire, 186 Mass. 189, 198 (1904), and Union Mkt. Nat'l Bank v. Gardiner, 276 Mass. 490, 495-496 (1931), in both of which, unlike the present cases, there was a complete identity between the executors and the testamentary trustees.

or of the words "is or may become justly due" which also appear in that section (see *Ames* v. *Ames,* 128 Mass. 277, 279 [1880]; *Bullard* v. *Moor,* 158 Mass. 418, 423-424 [1893]; *Peabody* v. *Allen,* 194 Mass. 345, 345-346, 347 [1907]; *Converse* v. *Nichols,* 202 Mass. at 272-274, 276; *Electric Welding Co.* v. *Fitz,* 215 Mass. at 318; *Thompson* v. *Owen,* 249 Mass. at 230, 233; *Gilman* v. *Taylor,* 266 Mass. 346, 350 [1929]). Section 13 talks in terms of when the creditor's right of action "accrues" (see *Electric Welding Co.* v. *Fitz,* 215 Mass. at 316; *Campbell* v. *Anusbigian,* 338 Mass. 35, 40 [1958]); it assumes that the executor continues to have assets in his possession at the time the creditor's cause of action accrues which the executor can be ordered to retain; it has no application to the situation in which, as in the present cases, all the assets have been distributed by the time the creditor's claim accrues. *Forbes* v. *Harrington,* 171 Mass. 386, 395 (1898).[19] Such a situation is one "for which ... [no] provision is ... made in the preceding sections" within the meaning of the concluding clause of G. L. c. 197, § 28; it is also one in which the creditor's claim accrues "[a]fter the settlement of ... [the] estate" within the meaning of the first clause of § 28. *Forbes* v. *Harrington,* 171 Mass. at 393-394.

It follows that the requirements of § 28 have been met and that the holders of the subordinated notes of IFI were entitled, by virtue of that section, to proceed against the "legatees of the deceased" therein referred to "in the manner provided in" G. L. c. 197, § 29. The defendants' subsidiary contention that neither Goodman's testamentary trustees nor his widow are "legatees" within the meaning of § 28 (or § 29[20]) is equally devoid of merit; the purposes of § 28 (and of § 29) are not to be frustrated by the fortui-

---

[19] Compare the concluding clause of G. L. c. 197, § 10.

[20] See *Forbes* v. *Harrington,* 171 Mass. at 391; *Reed* v. *Home Nat'l Bank,* 297 Mass. 222, 223 (1937); *Daley* v. *Daley,* 300 Mass. 17, 21 (1938). See also *New York Trust Co.* v. *Brewster,* 241 Mass. 155, 159 (1922).

tous interposition of trustees between the testator and the objects of his bounty.[21] The final decrees with respect to the liabilities of the trustees and of the widow will be affirmed, subject to a proviso that executions are not to issue against the widow for amounts which, in the aggregate, are in excess of the monies which have been distributed to her.[22] See G. L. c. 197, §§ 29 (note 12, *supra*) and 31.[23]

### D. THE SENIOR NOTES OF IFI.

Approximately one month following the entry of the final decrees described in part C of this opinion a group of nine banks and trust companies (plaintiffs) holding ten notes of IFI which were senior to its subordinated notes commenced an action for declaratory relief against the successful holders of the latter notes[24] and against the trustees under Goodman's will,[25] seeking a binding determination to the effect that the plaintiffs were entitled, by reason of their priority positions and the aggregate

---

[21] It has not been argued that the holder of a subordinated note cannot maintain an action against the guarantor of the note. See *Standard Brands, Inc.* v. *Straile,* 23 App. Div. 2d 363, 364, 366-367 (N.Y. 1965).

[22] The total amount due on the subordinated notes (both principal and interest) is in excess of the total amount of the distributions to the widow but not in excess of the value of the assets still held by the trustees pursuant to orders of the Superior Court.

[23] "If, under the two preceding sections, more than one person is liable for the debt, the creditor may recover such debt by a suit in equity ... against such persons so liable as are within reach of process. The court shall determine ... what amount is due to the plaintiff, and shall decide how much each of the defendants is liable to pay toward the debt."

[24] Also named as a defendant in this action was one Louise McDonough, who was described in the complaint as the holder of a subordinated note of IFI. McDonough does not appear from any of the records before us to have been a plaintiff in any of the proceedings described in part C of this opinion. She appeared and participated in the present action but has not appealed from the ensuing judgment. The judgment will stand as to her.

[25] Goodman's widow was not named as a defendant in the present action.

amount of their respective claims, to have paid to them all the amounts which the judge had previously ordered the trustees to pay to the holders of the subordinated notes. None of the senior notes had been guaranteed by Goodman; the earliest in point of time had been executed by IFI approximately twenty-two months after Goodman's death. The holders of the subordinated notes[26] have appealed from a final judgment which declares, in effect, that they must pay over to the plaintiffs all amounts received by them from Goodman's trustees[27] in accordance with part C hereof.

As has already been made to appear, the present action cannot be predicated on any guaranty made by Goodman.[28] Nor did any of the subordinated noteholders guarantee payment of any of the senior notes. As none of the subordinated noteholders was indebted to any of the plaintiffs, the present action cannot be maintained as one to reach and apply indebtedness due and owing to a principal debtor. The plaintiffs' argument appears to be that the terms of the subordinated notes should somehow be specifically enforced in accordance with their literal terms, and without regard to any particular rationale. See *Grise* v. *White,* 355 Mass. 698, 702-705 (1969). Great reliance is placed on the language of the subordinated notes which is bracketed as [3] in the appendix hereof that "[i]n the event that the Corporation [as defined in (1)] is at any time in default with respect to any Senior Debt [as defined in (2)], *no payment whatsoever shall be* paid by the Corporation or *received by the holder* without the prior written consent of the holders of all Senior Debt" (emphasis supplied) and on the language bracketed as [5]

[26] Except Louise McDonough. See note 24, *supra.*

[27] The trustees have not appealed, presumably because the relief granted was confined to a determination of the respective rights of the two groups of noteholders inter sese. No order or other relief was entered with respect to the trustees.

[28] Accordingly, cases such as *Gloucester Mut. Fishing Ins. Co.* v. *Boyer,* 294 Mass. 35 (1936), are of no practical application to the circumstances of the present case.

Cantor *v.* Newton.

and [6] concerning the powers of attorney granted to the senior noteholders with respect to "dividends."[29] The plaintiffs' argument overlooks all the language bracketed as [4] and the first four subparagraphs of [5] concerning a possible liquidation, dissolution, receivership, bankruptcy or reorganization of IFI.

All the language of these notes must be "construed together as constituting a single and consistent arrangement. The intent of the parties must be gathered from a fair construction of the contract as a whole and not by special emphasis upon any one part." *Crimmins & Peirce Co.* v. *Kidder Peabody Acceptance Corp.* 282 Mass. 367, 375 (1933). The subordination provisions "should be construed in accordance with justice and common sense and the probable intention of the parties." *Bowser* v. *Chalifour,* 334 Mass. 348, 352 (1956). A careful consideration of all the language bracketed as [2] through [6] in the light of the principles just stated leads us to the conclusion that the particular provisions relied on by the plaintiffs ([3], [5] and [6]) were intended to be confined in their application to payments which might be received by the subordinated noteholders from or out of the assets of IFI ([3], [4] and the first four subparagraphs of [5]). We find ourselves unable to conclude that the subordination provisions of these notes were intended to apply to a situation like the present, in which the holders of the subordinated notes are to receive payment out of the assets of someone other than the maker of the notes.[30] To reach a contrary conclusion would be to hold, in effect, that a subordinated noteholder could never realize upon a third-

---

[29] The plaintiffs do not refer to the opening clause of the language bracketed as [7] in the appendix.

[30] Indeed, all the cases cited by the plaintiffs on this point are concerned with the conflicting claims of senior and subordinated creditors to the assets of their common debtors who have gone into bankruptcy. See, e.g., *Matter of Credit Indus. Corp.* 366 F.2d 402, 408-410 (2d Cir. 1966); *Re Dodge-Freedman Poultry Co.* 148 F. Supp. 647, 649-652 (D.N.H. 1956), aff'd 244 F.2d 314 (1st Cir. 1957); *In re Kingsboro Mortgage Corp.* 379 F. Supp. 227, 228-230 (S.D.N.Y. 1974).

party guaranty that his note will be paid. We do not think the law requires or contemplates any such result.

The judgment in this action will be reversed.

## E. Orders.

The final decree in No. 93731 Equity[31] is to be modified by striking out paragraphs 3 and 4 thereof and, as so modified, is affirmed. The final decrees in Nos. 93118, 93119, 93121, 93122, 93123, 93124, 93125, 93133 and 93687 Equity are reversed, and judgments are to be entered declaring that none of the defendants named in any of those cases is liable to any of the plaintiffs named therein by reason of the notes which are the respective subjects of those particular cases. The final decree in No. 93120 Equity is reversed, and a judgment is to be entered declaring that none of the defendants named in that case is liable to the executor of the will of William Cantor by reason of the note which is the subject of that case. The final decree in No. 92859 Equity is to be modified by substituting the executrix of the will of Virginia Sears in her place and stead and, as so modified, is affirmed. The final decrees in Nos. 92870, 92876, 93685, 93686, 93779, 93810, 94114, 94118, 94122 and 94123 Equity are affirmed. All the foregoing affirmances are subject to the proviso set out in the conclusion of part C of this opinion. The judgment in No. 751 is to stand as to the defendant McDonough but is otherwise reversed; a new judgment is to be entered declaring that none of the other defendants named in that case is obliged to yield up to any of the plaintiffs named therein any portion of any monies received by him from Goodman's trustees or widow by reason of the subordinated notes which are the respective subjects of Nos. 92859, 92870, 92876, 93685, 93686, 93731, 93779, 93810, 94114, 94118, 94122 and 94123 Equity. Costs of appeal are not to be awarded to any party.

*So ordered.*

---

[31] All numbers set out in this part of the opinion are those appearing on the civil dockets of the Superior Court in Suffolk County.

Cantor *v.* Newton.

APPENDIX

$.............................                                    $..............................

INVESTMENT FUNDS INC.
(A Massachusetts Corporation)
% Five Year Subordinated Promissory Note


[1] IN FIVE YEARS FROM THE ISSUE DATE HEREOF, IN-
VESTMENT FUNDS INC., a Massachusetts Corporation, (hereinaf-
ter called the "Corporation") for value received hereby promises to
pay to ......................................................, the registered holder hereof,
.......................................................... THOUSAND DOLLARS in lawful
money of the United States of America, and to pay interest thereon
from the issue date hereof at the rate of ....................... per cent (   %)
per annum in like currency on the first day of .......................................
............................ in each year, both principal and interest to be payable
at the principal office of the Corporation in the City of Boston, Massa-
chusetts.

NO TRANSFER HEREOF SHALL BE VALID unless made by the
registered holder hereof, in person or by attorney, on the books of the
Corporation at the principal office of the Corporation in the City of
Boston, Massachusetts.

[2] THIS NOTE SHALL BE SUBORDINATED to all liabilities
of the Corporation to banks and trust companies (hereinafter referred
to as "Senior Debt").

The holder hereof covenants and agrees that no amount of principal
shall be prepaid or that such prepayment shall be accepted by him
without the prior consent of the holders of all Senior Debt. [3] In the
event that the Corporation is at any time in default with respect to any
Senior Debt, no payment whatsoever shall be paid by the Corporation
or received by the holder without the prior written consent of the hold-
ers of all Senior Debt.

[4] In the event that the Corporation takes any action to liquidate,
or dissolve, or makes an assignment for the benefit of creditors, or suf-
fers the appointment of a receiver or trustee, or there shall be any pro-
ceedings under the Bankruptcy Act, or for reorganization or a liquidation
of the Corporation no payments shall be accepted by the holder hereof
unless or until all Senior Debt has been paid in full, and in any such
proceedings any payment or distribution which might be payable or de-
liverable in respect of this Note shall be paid or delivered directly to
the holder or holders of Senior Debt pro rata to the proportion of
Senior Debt to make payment in full of all such Senior Debt. Any pay-
ments received by the holder hereof contrary to the provisions hereof,
shall be paid over by the holder hereof to the holders of Senior Debt
until all Senior Debt has been paid in full. [5] By acceptance hereof
the holder hereby constitutes and appoints the holder or holders of any
Senior Debt jointly and severally as attorney in fact for the following
purposes:

(a) collect any dividends or payments which would be due the
holder hereof, any liquidation, bankruptcy or similar proceedings;

(b) to prove his claim in any such proceedings and in connection
therewith the holder agrees to deliver the Note to the holder of
Senior Debt, making such proof;

(c) to vote said claim in any plan of reorganization, arrangement or similar proceedings;

(d) to accept new securities or other property to which the holder would be entitled in any such proceedings;

[6] (e) to do any and all things which the holder might do, it being understood that the holder or holders of Senior Debt shall account to the holder for any dividends or other payments received by it in excess of the amount necessary to satisfy claims of all Senior Debt in full, including interest and expenses of collection.

No payments or distribution to the holders of Senior Debt under the terms of this subordination shall as between the Corporation and the holder be deemed to be a payment on account of this Note. [7] By acceptance hereof the holder extends irrevocable offers to all present and future holders of Senior Debt to rely on the subordination provisions contained herein, and agrees that the extension of credit by any such holder of Senior Debt shall constitute an acceptance of this offer.

THIS NOTE MAY BE REDEEMED in whole or in part at the option of the Corporation, subject to all the foregoing terms governing Senior Debt, at any time prior to maturity.

IN WITNESS WHEREOF, INVESTMENT FUNDS INC. has caused this Note to be signed in its name by its President and its Treasurer, and its corporate seal to be hereto affixed the ................ day of ........................, 19

INVESTMENT FUNDS INC.      INVESTMENT FUNDS INC.

BY: ................................ TREAS.    BY: .................................... PRES.