LIGRAN, INC., A CORPORATION OF THE STATE OF NEW JERSEY AND MARTIN ANGER, PLAINTIFFS-APPELLANTS, v. MEDLAWTEL, INC., A NEW JERSEY CORPORATION, ET AL., DEFENDANTS, AND ELIZABETH BUTKUS, DEFENDANT-RESPONDENT.

Argued March 23, 1981—Decided July 16, 1981.

*Robert B. Cherry* argued the cause for appellants.

*Michael D. Mopsick* argued the cause for respondent (*Jeffer, Hopkinson & Vogel*, attorneys).

The opinion of the Court was delivered by

POLLOCK, J.

The primary issue in this case is when does a cause of action accrue against a person who is both the maker and the guarantor of payment of a promissory note. More specifically, where a promissory note is given as security for a lease, does the cause of action accrue at the time the note is issued or at the time the lease is breached? Inherent in this question is the problem of whether, as a matter of law, a maker can extend his or her liability by also signing as a guarantor of payment. We conclude that the resolution requires additional factual findings, and we remand the matter to the trial court for further proceedings.

I

On April 28; 1969, defendant Elizabeth Butkus personally executed a promissory note for $12,500 payable on demand to plaintiff Martin Anger. Anger is the former president of Ligran, Inc. and Butkus is the president of Medlawtel, Inc., which, like Ligran, is a close corporation. On April 26, 1969, Medlawtel leased the Village Motel and Swim Club in Rahway from Ligran. The parties agree that the note was issued as security for Medlawtel's performance on the lease.

Butkus signed on the face of the note as sole maker and on the back as sole guarantor of payment. The written guaranty reads:

> For value received the undersigned and each of them hereby forever waives presentment, demand, protest, notice of protest and notice of dishonor of the within note, and the undersigned and each of them guarantees the payment of said note with interest at maturity or any time thereafter and consents without notice to any and all extensions of time or terms of payment made by holder of said note.

Notwithstanding the agreement of the parties, the instruments do not specify their interrelationship. Because Anger does not claim to be a holder in due course, the denomination of the note as a demand instrument is not dispositive of the rights and duties of the parties. Furthermore, the lease is unclear in

regard to the term of the tenancy. Paragraph 2 of the lease states: "[t]he term of this demise shall be for five years, beginning May 1, 1969 and ending April 30, 1979 [*sic*] (together with additional five year option as hereinafter set forth)." Paragraph 26, pertaining to security in the event of an exercise of the option to renew, provides:

> Tenant shall have an option to renew the within lease for a period of five years upon the same terms and conditions as is set forth herein .... In the event Tenant exercises their option to renew the within lease, then the Landlord shall continue to hold the security deposit of $10,000 upon the same terms and conditions as set forth herein until the expiration of the option period.

Although the lease states the amount of the security deposit at $10,000, the trial court found that the promissory note for $12,500 represented the security deposit under the lease. The discrepancy arose because Ligran actually executed two leases to Medlawtel for two separate motels and those leases required a total security deposit of $25,000. Medlawtel paid the deposit of $12,500 for the second motel lease in cash. The note, thus, represented the security deposit for the Village Motel.

On December 1, 1969, the parties modified the lease. Paragraph 2 was amended to read: "[t]he term of this demise shall expire on April 30, 1977, together with a five-year option as hereinafter set forth." Paragraph 26 was modified: "[t]he tenant shall have the option to renew the within lease for a period of five years from May 1, 1977." Although the parties further modified the lease on July 31, 1972, paragraphs 2 and 26 remained virtually unchanged.

Under the lease, Medlawtel was responsible for payment of real estate taxes. In March 1975, Anger learned that Medlawtel was in arrears by $11,352 on its payment of real estate taxes. Consequently, by May 1975 Anger demanded payment of the promissory note, which until then had been held in escrow by the attorney for Ligran. Butkus countered that she was no longer liable on the note because of the expiration of six years from the date of issue, April 28, 1969. Thereupon Ligran filed a summary dispossess action and regained possession of the premises in June 1975.

In August, Anger took an assignment of the note, and in September 1975, Anger and Ligran, asserting various causes of action, sued Medlawtel, Butkus and others. Anger recovered judgment against Medlawtel on one count of the complaint for $11,352 for unpaid taxes. In another count, Anger sought payment of the note, the intended due date of which framed the dispute between Anger and Butkus. Anger contended that the suit was timely because the note was contingent upon a breach of the lease, while Butkus maintained that the action was barred because the note became payable upon issue. At the center of the dispute was the dual status of Butkus as maker and guarantor of payment of the note.

In holding the action to be timely, the trial court relied on the rule that a cause of action against an indorser accrues upon demand following dishonor. *N.J.S.A.* 12A:3–122(3). Analogizing a guarantor to an indorser, the trial court ruled that the six-year statute of limitations, *N.J.S.A.* 2A:14–1, did not begin to run against Butkus as guarantor until demand was made for payment sometime between March and May 1975. The trial court, however, limited recovery against Butkus to that part of the $11,352 judgment against Medlawtel that remained uncollected.

In reversing, the Appellate Division relied on the rule that a cause of action against a maker of a demand note accrues on the date of issue. *N.J.S.A.* 12A:3–122(1)(b). That court reasoned that *N.J.S.A.* 12A:3–416(4) prohibits enlargement of a sole maker's liability where the maker is also a guarantor of payment. Assuming that the note was a demand instrument, the Appellate Division found that the cause of action accrued on the date of issue, April 28, 1969. Consequently, the Appellate Division concluded that the action was time-barred. 174 *N.J.Super.* 597 (App.Div.1980). Neither the trial court nor the Appellate Division considered the question whether the note came due upon issue or upon breach of the lease. We granted certification. 85 *N.J.* 139 (1980). Although we reverse and remand because of

the factual dispute concerning the intended due date of the note, we affirm the principle that where a maker also signs a demand note as a guarantor of payment, the statute of limitations begins to run from the date of issue, not from the date of demand for payment following dishonor.

## II

Anger contends that even if the note became due upon issue, the guaranty of payment executed by Butkus constitutes a separate and distinct contract from the note she executed as maker. He argues that the separate guaranty thus postpones the time for accrual of an action from the date of the note, April 28, 1969, to the date of demand upon the maker, sometime between March and May 1975.

The Code does not state expressly when a cause of action accrues against a guarantor, but the function of a guarantor provides the rationale for the determination of the accrual of a cause of action on a guaranty. The Code contemplates two kinds of guarantors: a guarantor of payment and a guarantor of collectibility. A guarantor of payment "engages that if the instrument is not paid when due he will pay it according to its tenor without resort by the holder to any other party." *N.J.S.A.* 12A:3–416(1). Thus, the liability of a guarantor of payment "becomes indistinguishable from that of a co-maker." Code comment, *N.J.S.A.* 12A:3–416; *see N.J.S.A.* 12A:3–413(1) (maker "engages that he will pay the instrument according to its tenor"). In effect, the guarantor of payment waives any requirement that the holder proceed against the maker as a condition precedent to his own liability. In brief, a guarantor of payment, like a maker, is primarily liable on the note. N.J. Study comment 1, *N.J.S.A.* 12A:3–416 ("One who by indorsement guarantees payment waives the conditions precedent that usually attach to the indorsement contract and becomes for all practical purposes a co-maker"). In this respect, the liability of a guarantor of payment is distinguishable from that of a guar-

antor of collectibility, *N.J.S.A.* 12A:3–416(2). Like an indorser, a guarantor of collectibility is secondarily liable. That is, before proceeding against a guarantor of collectibility, the holder must first take action against the maker or show that such action would be useless. N.J. Study comment 1, *N.J.S.A.* 12A:3–416.

Usually, a guaranty of a negotiable instrument involves three parties: a guarantor, a creditor (the person to whom the guaranty extends) and a debtor (the maker or drawer of the instrument). Generally, a guarantor is a different person from the maker or, if the same person, signs in different capacities when signing as maker and guarantor (*e. g.*, an individual may sign as an officer of a corporate maker and also sign individually as a guarantor of the corporate obligation). In this case, the maker and guarantor are the same person. Addressing such an arrangement, the Code provides: "No words of guaranty added to the signature of a sole maker or acceptor affect his liability on the instrument." *N.J.S.A.* 12A:3–416(4). Nothing in the history of the Code or in any reported case sheds light on the intended construction of that section where the maker and guarantor are the same person.

We believe that the logical construction of *N.J.S.A.* 12A:3–416(4) is that a sole maker cannot reduce his liability by adding words of guaranty to his signature. For example, a sole maker cannot alter his primary liability on the instrument by signing also as a guarantor of collectibility. *F. Hart & W. Willier, Commercial Paper under the Uniform Commercial Code* §§ 13.12–13.14 (1976). In general, when a maker also signs a note as guarantor, the guaranty is surplusage. *See Union Bank v. Dorn*, 254 *Cal.App.*2d 157, 61 *Cal.Rptr.* 893, 894 (Ct.App.1967) (where note executed by partnership in which each individual guarantor is a partner, "guarantors are nothing more than principal obligors under another name"); *Rock Island Bank & Trust v. Stauduhar*, 59 *Ill.App.*3d 892, 17 *Ill.Dec.* 99, 375 *N.E.*2d 1383, 1389 (App.Ct.1978) (where guarantor signed note as one of two makers, guaranty of the debt of co-maker is essentially surplusage); *Rice v. Travelers Express Co.*, 407 *S.W.*2d 534, 537

(Tex.Ct.App.1966) (partner who guaranteed partnership note liable as both guarantor and maker). In certain limited and unusual situations, however, a maker may enlarge the scope, if not the duration, of his liability by signing also as a guarantor. For example, a guarantor, like an indorser, warrants prior signatures. By signing as a guarantor, a maker-guarantor provides a separate basis for recovery even if the signature as maker is a forgery. *See N.J.S.A.* 12A:3–417(2); *Hopkins v. First Nat'l Bank,* 551 *S.W.*2d 343, 345 (Tex.1977). Thus, a person may serve in two capacities under the Code. *See N.J. S.A.* 12A:3–202(4) (indorser-guarantor). To that extent, *Central Jersey Bank & Trust v. Lady Van Inc.,* 154 *N.J.Super.* 459 (Law Div. 1977), relied upon by the trial court in this case, correctly held that the Code permits a person to be both an indorser and a guarantor of payment. The determination in *Lady Van,* however, that a cause of action against the guarantor of payment of a demand note accrues upon notice of dishonor, rather than upon issue, was in error.

Other states have recognized that a cause of action on a demand note accrues against a third-party guarantor of payment on the same date that it accrues against a maker. *See Cantor v. Newton,* 4 *Mass.App.* 686, 358 *N.E.*2d 247 (App.Ct. 1976) (guarantor's liability attached at date of note, since demand not necessary to charge guarantor); *American Trading Co. v. Fish,* 42 *N.Y.*2d 20, 396 *N.Y.S.*2d 617, 364 *N.E.*2d 1309 (Ct.App.1977) (cause of action against guarantor of non-negotiable notes accrued at same time it accrued against maker); Annot., "When statute of limitations begins to run against note payable on demand," 71 *A.L.R.*2d 284, 303 (1960). In this case, the dual roles of Butkus as maker and guarantor of payment both result in her primary liability on the note. Although her contract as guarantor of payment is distinct from that as maker, the cause of action against her in both capacities accrues at the same time, the date of issue of the demand note. *See Marinelli v. Lombardi,* 16 *N.J.Misc.* 71, 73 (Sup.Ct.1938) (partial payments on note by maker do not serve to extend statute of limitations in

regard to guarantor, whose contract is separate from that of maker).

## III

The lease and promissory note should be read together as instruments executed as part of the same transaction. *N.J. S.A.* 12A:3–119. Moreover, where a note has not been negotiated to a holder in due course, it should be construed, like any contract, according to the intention of the parties. According to Anger, the parties intended that the note would come due upon a breach of the lease and, therefore, his cause of action accrued when the breach occurred. Anger contends further that he relied on Butkus' promise as maker and guarantor to pay the promissory note in the event of a default under the lease and that it is inequitable to permit Butkus to avoid liability by recourse to the statute of limitations. *See N.J.S.A.* 12A:1–103. Although Butkus agrees that the note was security for the lease, she asserts that the parties intended that a cause of action accrue on issue of the note. Nonetheless, she testified on cross-examination that the note was contingent on breach of the lease. As previously indicated, neither of the lower courts focused on the issue of when a cause of action on the note was intended to accrue. Without limiting the scope of the proceedings on remand, the trial court should consider whether the parties intended that a cause of action on the note accrue on the date of issue or on breach of the lease. In addition, the trial court should consider whether the option to renew in the original lease contemplated a renewal of the note and whether the subsequent modifications of the lease were intended to effectuate such a renewal.

To conclude, if the parties intended to create a demand note due upon issuance, unaltered by any subsequent modifications of the lease, Anger's action is barred. If, however, the parties contemplated a note on which a cause of action accrued upon breach of the lease, Anger's action is timely. If timely, recovery

on the note should be limited, as the trial court found in the proceedings below, to that part of the judgment against Medlawtel for unpaid real estate taxes that remain uncollected.

We reverse and remand. We do not retain jurisdiction.

*For reversal and remandment* —Chief Justice WILENTZ, and Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER, HANDLER and POLLOCK—7.

*For affirmance* —None.