## NATIONAL BANK OF ·DETROIT, Plaintiff,

v.

## The UNITED STATES, Defendant.

No. 439–82C.

United States Claims Court.

March 4, 1983.

H.G. Sparrow, III, Detroit, Mich., with whom was Jeffrey M. Petrash, Detroit, Mich., for plaintiff.

George M. Beasley, III, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant.

## ORDER

KOZINSKI, Chief Judge.

Plaintiff, National Bank of Detroit, loaned $6.7 million to Michigan Agri-Fuels, Inc. Defendant, through the U.S. Department of Commerce Economic Development Administration (EDA), guaranteed a portion of the loan. On February 10, 1982, the bank informed EDA that the borrower had defaulted on the loan by failing to make certain payments; it requested EDA's permission to send an acceleration notice. EDA gave such permission on February 17, 1982.

Since failure of the borrower to pay any installment of principal or interest constituted a default under the guaranty agreement, on February 24, 1982, the bank made a demand upon EDA for payment. Under the terms of the guaranty, the bank was then required to provide EDA with documentation of the bank's compliance with its obligations.

For reasons which are the subject of dispute in this case, EDA failed to make payment on the guaranty. On August 30, 1982, plaintiff brought a state court action against the borrower.[1] Two days later, it brought this action on the guaranty against the United States.

On January 31, 1983, defendant moved to stay proceedings pending resolution of the state court case. Defendant argues that some of the issues relevant to this proceeding, including what it considers to be the fundamental one of whether the borrower in fact defaulted, are best resolved in state

---

1. In that action, *National Bank of Detroit v. Michigan Agri-Fuels, Inc.*, No. 82–7119CK, Circuit Court of Gratiot County, Michigan, the bank seeks to recover against the borrower and other guarantors, and to foreclose against the collateral.

court since they presumably involve issues of state law.[2] Defendant further argues that a stay is appropriate so as to prevent a multiplicity of actions and avoid the possibility that the United States will be exposed to inconsistent judgments in case this court and the state court should differ on the question of whether a default has occurred. Plaintiff argues that the issues in state court are fundamentally different from those here and that, in any case, the terms of the guaranty agreement entitled it to pursue this action separately and without interruption.

## DISCUSSION

### I.

█ A motion for stay of proceedings pending resolution of related claims in another forum is directed to the court's discretion. *Will v. Calvert Fire Insurance Co.,* 437 U.S. 655, 662–64, 98 S.Ct. 2552, 2557–58, 57 L.Ed.2d 504 (1978) (plurality opinion). In general, the decision whether or not to grant a stay turns on considerations of judicial economy, economy to the parties, priority in assertion of jurisdiction and deference to the special expertise of state courts in resolving disputes involving questions of state law. *See Landis v. North American Co.,* 299 U.S. 248, 254–255, 57 S.Ct. 163, 165–166, 81 L.Ed. 153 (1936); *PPG Industries, Inc. v. Continental Oil Co.,* 478 F.2d 674, 682–83 (5th Cir.1973).[3]

The Supreme Court recently offered significant guidance as to the proper exercise of our discretion in ruling on a motion to stay proceedings pending resolution of state court adjudication. In *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* —— U.S. ——, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), the Court affirmed the Fourth Circuit's reversal of a decision to stay proceedings. The Court noted that "the federal courts have a 'virtually unflagging obligation ... to exercise the jurisdiction given them,'" and that a court's decision whether to exercise such jurisdiction should be based on "a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Id.* —— – ——, 103 S.Ct. at 937, *quoting Colorado River Water Conservation District v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976).[4]

More specifically, the Court held that avoidance of piecemeal litigation should be treated as an important but not controlling factor in the decision, —— U.S. at ——, 103 S.Ct. at 940; that temporal priority should be considered but "not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions," *id.;* and that "[a]lthough in some rare circumstances the presence of state law issues may weigh in favor of [surrender of jurisdiction], the presence of federal-law issues must always be a major consideration weighing against surrender." *Id.* at ——, 103 S.Ct. at 942 (footnote omitted). Moreover, the Court appeared to suggest that surrender of jurisdiction is inappropriate if it deprives one of

---

2. The court notes, however, that the guaranty calls for application of federal law.

3. Some additional factors have also been considered. *Nigro v. Blumberg,* 373 F.Supp. 1206, 1212–13 (E.D.Pa.1976), for example, offers a list of seven factors to be weighed in deciding whether to stay proceedings: "(1) considerations of comity; (2) promotion of judicial efficiency; (3) adequacy and extent of relief available in the alternative forum; (4) identity of parties and issues in both actions; (5) likelihood of prompt disposition in the alternative forum; (6) convenience of parties, counsel and witnesses; and (7) possibility of prejudice to a party as a result of the stay."

4. While the quoted language specifically refers to dismissals rather than stays, the Court noted that the same considerations apply to stays as to dismissals because "a stay is as much a refusal to exercise federal jurisdiction as a dismissal." —— *U.S. at* ——, *103 S.Ct. at 943.* This is so, the Court reasoned, because the issuance of a stay is necessarily premised upon the assumption that "the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties," thus "contemplat[ing] that the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses." *Id.*

the parties of a substantive right to which it is entitled. *See id.* at ——, 103 S.Ct. at 943.

## II.

 The relationship between a lender and a guarantor is unusual in that the question of whether an action may be maintained on the guaranty without first exhausting legal remedies against the borrower is generally a significant, bargained-for provision of the guaranty contract. There are, of course, a variety of guaranties and the rights and responsibilities of the parties will be governed by the terms of their particular contract. *Universal Metals & Machinery, Inc. v. Bohart,* 539 S.W.2d 874, 877 (Tex.1976). See A. Stearns & J. Elder, *The Law of Suretyship* § 4.2 (5th ed. 1951). The law is clear, however, that unless the contract provides that suit on the guaranty is conditioned upon exhaustion of remedies against the borrower, the lender may sue on the guaranty without first bringing an action on the note. *Kupka v. Morey,* 541 P.2d 740, 753 (Alaska 1975); *Beach v. Beach,* 141 Conn. 583, 107 A.2d 629, 633 (1954); *Robey v. Walton Lumber Co.,* 17 Wash.2d 242, 135 P.2d 95, 101–03 (1943). *See* U.C.C. § 3–416(3).[5]

The ability to sue the guarantor immediately gives the lender a variety of advantages. Depending on the terms of the guaranty, the guarantor may or may not be able to raise the same defenses as the borrower. *Robey,* 135 P.2d at 103.[6] The action on the guaranty may proceed more quickly than the action on the note, leading, per-

haps, to a more expeditious repayment of the money plaintiff claims is owed to it. An action against a guarantor may be less complicated, involve fewer parties and therefore be less costly to litigate than an action against the borrower.[7] An action on the guaranty may even be maintainable where the action on the underlying loan is barred. *See Dahmes v. Industrial Credit Co.,* 261 Minn. 26, 110 N.W.2d 484, 488–89 (1961); *Universal Metals & Machinery, Inc. v. Bohart,* 539 S.W.2d at 877–78. *See generally* 38 Am.Jur.2d *Guaranty* § 54 (1968). Finally, the lender may perceive procedural or other advantages to litigating its claim in one forum rather than another.

 A stay of proceedings in this court would vitiate all of these benefits to which the plaintiff is entitled under the guaranty agreement. Had defendant wished to assure this result, it could have written the terms of the guaranty so that that suit thereon would be conditioned upon exhaustion of the bank's remedies against the borrower or the collateral. It did not. The court must conclude that the unconditional nature of defendant's obligation was a bargained-for term of the guaranty contract and constituted an inducement for the bank to make the loan to Michigan Agri-Fuels, Inc. A stay of proceedings would effectively change the terms of the bargain by precluding the bank from proceeding on the guaranty independent of its action on the underlying loan.

As the Supreme Court noted in *Moses H. Cone Memorial Hospital,* "our task . . . is not to find some substantial reason for the

---

5. The Uniform Commercial Code differentiates between a guaranty of payment and a guaranty of collection. *See generally Ligran, Inc. v. Medlawtel, Inc.,* 86 N.J. 583, 432 A.2d 502 (1981). A guaranty of payment does not require the lender to exhaust his rights against the borrower before bringing an action on the guaranty. *Id.* Unless the terms of the guaranty specify that it is one of collection, it will be presumed to be a guaranty of payment. *Community National Bank v. Dawes,* 369 Mass. 550, 340 N.E.2d 877, 883 & n. 11 (1976). *See Still v. Citizens Bank,* 6 U.C.C.Rep.Serv. (Callaghan) 813, 815 (Okl.Ct.App.1969).

6. In this case, for example, the guaranty itself lists the specific events of default, among them nonpayment of principal or interest by the borrower. The guaranty does not expressly incorporate any defenses the borrower may have under the terms of the note, and defendant will have to establish that it may raise such defenses.

7. Here, the state court action involves not merely collection on the note, but also foreclosure on the collateral. *See* n. 1 *supra.* Because that action will adjudicate the rights of others who claim an interest in the collateral, there are 53 parties represented by 11 different counsel.

*exercise* of federal jurisdiction . . . ; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice . . . to justify the *surrender* of that jurisdiction." —— U.S. at ——, 103 S.Ct. at 942 (emphasis original). Here, the federal litigation is nearly ready for trial while the state court proceedings appear to be far from it. It is unclear whether state law issues will play a role in this proceeding, but federal issues almost certainly will since a federal loan guaranty will have to be interpreted. *See* p. 714 & n. 2 *supra.*

The only factor militating against assertion of jurisdiction is the possible avoidance of piecemeal litigation. However, this factor weighs most heavily when both parties in the federal proceeding are also involved in the state court case. Here, the United States is not a party to the state court litigation and, under principles of sovereign immunity, cannot be brought into that case. The state court would therefore not be able to adjudicate all issues relevant to our litigation. Under the circumstances, this factor, standing alone, is an insufficient basis for surrender of our jurisdiction. This is particularly the case where, as here, refusal by the court to exercise jurisdiction would nullify a term of the agreement between the parties, depriving one of them of a substantive right to which it is entitled.

### CONCLUSION

The motion for a stay of proceedings is denied.

IT IS SO ORDERED.