**ESTATE OF Richard R. RHYNER, Appellant,**

v.

**FARM CREDIT BANK OF SPOKANE, Appellee.**

No. S–2780.

Supreme Court of Alaska.

Sept. 29, 1989.

Rehearing Granted in Part and Opinion Amended Oct. 25, 1989.

---

1002

Karl L. Walter, Jr., Anchorage, for appellant.

Joseph L. Reece, Davis, Wright & Jones, Anchorage, for appellee.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Justice.

This appeal presents the question whether the superior court erred in fixing the deficiency due a preferred ship mortgagee. We reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND.

In 1982, Ken Kirkman, Jane Kirkman and Richard R. Rhyner formed a partnership known as K & R Fish. The partnership borrowed $210,300 from the Puget Sound Production Credit Association[1] to purchase an aluminum skiff and a seiner known as the *Kog Won Ton.*

Rhyner and Ken Kirkman signed the loan and security agreements as partners, and all three persons signed as individuals. In addition, each guaranteed payment by the partnership. The debt was secured by preferred ship mortgages on the *Kog Won Ton* and the *Eva Marie,* a vessel owned by the Kirkmans. The bank also acquired a security interest in the aluminum skiff pursuant to state law. The debtors defaulted.

Rhyner died in June of 1983. In December of 1983 the bank filed a timely claim in state court against the estate for the unpaid loan balance plus interest. In April of 1984 the personal representative filed a notice of allowance of the full claim in state court (in the amount of $248,559, representing principal, interest, insurance and attorney's fees); however, the personal representative never paid the claim.

In 1985, the bank filed an admiralty claim in federal court to foreclose the *Kog Won Ton* mortgage and obtain a deficiency judgment. The vessel sold for $90,000. After expenses, the bank netted some $81,-000 on the sale. The federal court confirmed the sale and entered a final default judgment *in rem* against the *Kog Won Ton* in October of 1986.[2]

In September of 1987 the bank moved for summary judgment in the state court action. Following a hearing, the probate master proposed findings and conclusions and recommended that the superior court enter summary judgment for the bank. The master recommended judgment in the amount of the outstanding balance of the debt minus an offset for the proceeds from the *Kog Won Ton* sale. The superior court heard argument, adopted the master's recommendation, and entered summary judgment against the estate.

The estate appeals.

## II. DID THE SUPERIOR COURT ERR IN ENTERING SUMMARY JUDGMENT FOR THE MORTGAGEE BECAUSE THE SALE PRICE WAS INADEQUATE?

The parties briefed and argued this case on the assumption that state law controls the rights and remedies available to the secured creditor. However, the creditor's right to a deficiency judgment following foreclosure of a preferred ship mortgage is governed by the Ship Mortgage Act, 1920, 46 U.S.C. §§ 911–984 (repealed

---

1. The Farm Credit Bank of Spokane is pursuing this claim as the successor in interest to the original lender. For convenience, we refer to the lender and its various successors as "the bank."

2. Neither party argues that the federal proceeding is res judicata to any claim in the instant case.

1988[3]). *Walter E. Heller & Co. v. O/S Sonny V*, 595 F.2d 968, 971 (5th Cir.1979); T. Schoenbaum, *Admiralty and Maritime Law* § 8.5, at 262 & n. 17 (1987); *see also Brown v. Baker*, 688 P.2d 943, 949 (Alaska 1984); AS 45.09.104.[4] 46 U.S.C. § 951 provided in part at times relevant to this litigation:

A preferred mortgage shall constitute a lien upon the mortgaged vessel in the amount of the outstanding mortgage indebtedness secured by such vessel. Upon the default of any term or condition of the mortgage, such lien may be enforced by the mortgagee by suit in rem in admiralty. Original jurisdiction of all such suits is granted to the district courts of the United States exclusively.

46 U.S.C. § 954(a) provided:

Upon the default of any term or condition of a preferred mortgage upon a vessel, the mortgagee may, in addition to all other remedies granted by this chapter, bring suit in personam in admiralty in a district court of the United States, against the mortgagor for the amount of the outstanding mortgage indebtedness secured by such vessel *or any deficiency* in the full payment thereof.

(Emphasis added.)

■ Although the Ship Mortgage Act creates exclusive federal court jurisdiction over *in rem* proceedings to foreclose the security, a state court has concurrent jurisdiction over an *in personam* claim for a deficiency. *Brown*, 688 P.2d at 949 (citing *Reedsburg Bank v. Apollo*, 508 F.2d 995 (7th Cir.1975)).

The security agreement grants the bank all the rights and remedies available to a secured creditor under applicable law. Specifically, the bank retained the right to seize and sell the collateral at a public or private sale, and to recover a deficiency judgment. These remedies are optional and cumulative.

■ Following a public foreclosure sale, a preferred ship mortgagee is ordinarily entitled to recover a deficiency equal to the unpaid balance less the net proceeds of the forced sale. *O/S Sonny V*, 595 F.2d at 971. However, when equity requires, the court has discretion to increase the offset to an amount equal to the "fair value" of the collateral at the time of the sale. *Id.* In order to withstand summary judgment, the debtor need not show gross inadequacy of price, but only "a preliminary showing of a probable significant disparity between the sales price of the property and its fair value." *Id.* at 972. The debtor has the burden at trial of establishing a fair value greater than the sales price. *Id.* at 972 n. 3.

The question whether the public sale price is fair is within the discretion of the trial court. *Id.* at 971. Relevant factors include the appraised value of the collateral, whether the creditor was the foreclosure purchaser, and, if so, whether the creditor swiftly resold the collateral at a profit. *Id.* at 972. *See also Bollinger & Boyd Barge Serv. v. M/V Captain Claude Bass*, 576 F.2d 595, 598 (5th Cir.1978); *Southern New England Production Credit Ass'n v. O/S My Marie*, 611 F.Supp. 757, 759 (D.Me.1985).

■ The estate argues that the evidence presented a genuine issue of material fact[5]

---

**3.** In 1988 (effective January 1, 1989), the Ship Mortgage Act was extensively amended and recodified. *See* Act of November 23, 1988, tit. I, § 102(c), Pub.L. No. 100–710, 1988 U.S.Code Cong. & Admin.News (102 Stat.) 4735, 4739–49 (codified at 46 U.S.C. §§ 31301–31343); H.Rep. No. 918, 100th Cong., 2d Sess. 11–24, 35–49 (1988), *reprinted in* 1988 U.S.Code & Cong. & Admin.News 6104, 6104–17, 6128–42; T. Schoenbaum, *Admiralty and Maritime Law* § 8.5, Supp. at 80–81 (1987 & Supp.1989) (setting forth highlights of the Act).

**4.** Alaska's secured transactions statute "does not apply to a security interest subject to any statute of the United States such as the Ship Mortgage Act, 1920, to the extent that the statute governs the rights of parties to and third parties affected by transactions in particular types of property." AS 45.09.104(1).

**5.** A summary judgment is affirmed if the evidence in the record presents no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Zeman v. Lufthansa German Airlines*, 699 P.2d 1274, 1280 (Alaska 1985). Once the moving party meets its burden of demonstrating the absence of a genuine issue of fact, the non-moving party must produce competent evidence tending to show

concerning the fair value of the *Kog Won Ton* at the time of the 1985 foreclosure sale. The record contains appraisals of the vessel performed in 1984 and 1985, assessing its value between $150,000 and $275,000. The foreclosure bid was therefore between thirty-three and sixty per cent of the appraised value. The bank was not the foreclosure purchaser.

We hold that under these facts the estate has made "a preliminary showing of a probable significant disparity between the sales price of [*Kog Won Ton*] and its fair value." Therefore, the bank was not entitled to summary judgment, and we remand for a hearing on this issue.

■ The estate also argues that it was entitled to an adjustment in the deficiency amount because the bank sold the *Kog Won Ton* together with all the equipment, permits, and licenses on board without crediting the estate separately for the value of the equipment. This argument is without merit.

A preferred ship mortgage attaches to the vessel and all the equipment and appurtenances on board owned by the vessel's owner. *United States v. F/V Golden Dawn*, 222 F.Supp. 186 (E.D.N.Y.1963), *quoted in First Nat'l Bank & Trust Co. of Escanaba v. Oil Screw Olive L. Moore*, 379 F.Supp. 1382, 1388–89 (W.D.Mich.1973), *aff'd*, 521 F.2d 1401 (6th Cir.1975). In the instant case, the security agreement specifically included in the mortgage all "refrigeration, parts, equipment, gear, fire fighting and life saving equipment, propulsion machinery, all navigation equipment, electronic equipment, auxiliary machinery, anchors chain and deck gear, hydraulic pumps and motors, and all fishing gear, licenses and permits." [6]

The bank was within its rights in selling the equipment with the *Kog Won Ton*. The record is devoid of evidence of the value of the equipment separate from the

ship. Absent any credible evidence of its value, we do not believe that the superior court erred in refusing to adjust the deficiency.

### III. IS THE ESTATE ENTITLED TO A REDUCTION IN THE DEFICIENCY AMOUNT BECAUSE THE DECEDENT HAD ONLY A PARTNERSHIP INTEREST IN THE SECURITY?

■ The estate asserts that it was prejudiced because Ken Kirkman had possession and an ownership interest in the *Kog Won Ton*. Thus, the estate impliedly contends (1) that it could not sell the collateral and (2) that the bank's refusal to surrender the security would render the estate powerless to protect itself against the decedent's former partners.

Partners own partnership property as tenants in partnership. AS 32.05.200(a). Upon death of a partner, the partnership dissolves by operation of law. AS 32.05.260(4). The decedent's interest in specific partnership property vests in the surviving partners. AS 32.05.200(b)(4). In return, the legal representative of a deceased partner has a right to an accounting of the decedent's interest in the partnership as of the date of dissolution. AS 32.05.380.

These sections demonstrate that the estate was not powerless to protect itself from the decedent's former partners. The personal representative could have demanded an accounting of the decedent's interest in the partnership and its assets. Moreover, had the estate paid the claim, the estate would be subrogated to all the rights of the bank and could foreclose and sell the *Kog Won Ton* if the loan remained in default. *See Behlen Mfg. Co. v. First Nat'l Bank of Englewood*, 472 P.2d 703, 706 (Colo.App.1970) (surety is subrogated to all rights and remedies of the secured creditor). Thus, the estate at all times had

---

that there are factual issues remaining to be tried. *Brock v. Rogers & Babler, Inc.*, 536 P.2d 778, 782–83 (Alaska 1975). All reasonable inferences of fact are drawn against the moving party and in favor of the non-moving party. *Zeman*, 699 P.2d at 1280.

**6.** Although the loan agreement did purport to give the bank a security interest in fishing licenses and permits, the bank does not assert a security interest in any limited entry fishing permit. *See* AS 16.43.150(g); 09.38.015. The estate does not contend otherwise.

the ability to protect its interests against those of the surviving partners of K & R Fish.

## IV. DID THE MORTGAGEE WAIVE ITS RIGHT TO RECOVER A DEFICIENCY BECAUSE IT FAILED TO TENDER ITS SECURITY TO THE PERSONAL REPRESENTATIVE?

■ The estate argues that the bank waived its right to a deficiency when it filed a secured claim and refused to tender its security to the estate.

When a creditor presents a timely claim against an estate, the personal representative may allow or disallow the claim. AS 13.16.475(a). When the four-month period for filing claims expires, the personal representative "shall proceed to pay the claims allowed against the estate." AS 13.16.-480(a), .470. When the personal representative allows a claim but fails to pay it, the claimant may secure a court order directing payment of the claim. AS 13.16.480(a).

Payment of a secured claim is governed by AS 13.16.490.[7] If the creditor surrenders its security, payment is based on the amount allowed.[8] *Id.* If the creditor exhausts the security before receiving pay-

ment, payment is based on the amount allowed less the "fair value" of the security. AS 13.16.490(1). If the creditor does not exhaust the security, payment is based on the amount allowed less the value of the security as determined by agreement or litigation. AS 13.16.490(2).

In our view the provisions of these sections demonstrate that a creditor which submits a secured claim does not thereby waive its right to sell the security or seek a deficiency judgment. Instead, AS 13.16.-490(1) expressly recognizes that the creditor retains the option to exhaust the security at any time "before receiving payment." Moreover, AS 13.16.495 contemplates that the precise amount of certain claims will not always be known when the personal representative commences distribution of the assets of the estate, and establishes a procedure to protect all interested parties against inadvertent over- or underpayments.[9] We therefore hold that the bank did not waive any of its available remedies by filing a partially secured claim and retaining its security, as the estate never tendered title or payment based on the amount allowed.[10]

---

**7.** Alaska Statute 13.16.490 provides:

Payment of a secured claim is upon the basis of the amount allowed if the creditor surrenders the creditor's security; otherwise payment is upon the basis of one of the following:

(1) if the creditor exhausts the security before receiving payment, unless precluded by other law upon the amount of the claim allowed less the fair value of the security; or

(2) if the creditor does not have the right to exhaust the security or has not done so, upon the amount of the claim allowed less the value of the security determined by converting it into money according to the terms of the agreement under which the security was delivered to the creditor, or by the creditor and personal representative by agreement, arbitration, compromise or litigation.

**8.** In an insolvent estate, the amount paid may be less than the amount allowed, because claimants of the same class share in the available assets in proportion to the amounts of their claims. *See* AS 13.16.470, .480(b)(1), .520(b).

**9.** Alaska Statute 13.16.495 provides:

*Claims not due and contingent or unliquidated claims.* (a) If a claim which will become due

at a future time or a contingent or unliquidated claim becomes due or certain before the distribution of the estate, and if the claim has been allowed or established by a proceeding, it is paid in the same manner as presently due and absolute claims of the same class.

(b) In other cases the personal representative or, on petition of the personal representative or the claimant in a special proceeding for the purpose, the court may provide for payment as follows:

(1) if the claimant consents, the claimant may be paid the present or agreed value of the claim, taking any uncertainty into account,

(2) arrangement for future payment, or possible payment, on the happening of the contingency or on liquidation may be made by creating a trust, giving a mortgage, obtaining a bond or security from a distributee, or otherwise.

**10.** A tender occurs "when payment is offered to the creditor and the offer is refused.... [T]he debtor must evidence a willingness, accompanied by the ability and an attempt, to pay." *King v. O/S Nordic Maiden,* 587 F.Supp. 46, 48 (W.D.Wash.1984). (Citations omitted).

## V. DID THE SUPERIOR COURT ERR IN ENTERING SUMMARY JUDGMENT FOR THE MORTGAGEE BECAUSE THE MORTGAGEE FAILED TO EXHAUST ITS SECURITY?

The estate argues that its liability for a deficiency should be reduced by the value of additional collateral which the bank has not foreclosed. Specifically, the estate contends that it should receive credit for the value of the *Eva Marie* and the aluminum skiff.

A creditor need not exhaust all its security before seeking a deficiency judgment. When the estate satisfies the judgment below, it will succeed to the bank's interest in the omitted security. However, should the bank elect to foreclose on the additional collateral before the estate satisfies the judgment, the estate would be entitled to an offset equal to the net proceeds of the forced sale. AS 13.16.490(1). If the estate tenders payment in full and the bank elects to keep the skiff and the *Eva Marie*, the estate would be entitled to an offset equal to their fair value. AS 13.16.490(2).

## VI. DID THE SUPERIOR COURT ERR IN GRANTING SUMMARY JUDGMENT BASED ON RHYNER'S PERSONAL GUARANTY?

The superior court adopted the master's conclusion that the bank was entitled to summary judgment on its claim that Rhyner's personal guaranty provided it with an independent basis for its claim against the estate. We disagree.

First, the manner in which Rhyner signed the promissory note, in the bottom right-hand corner, "indicates an intent to sign as a maker of the note." *Seronick v. Levy*, 527 N.E.2d 746, 748–49 (Mass.App. 1988) (citing Uniform Commercial Code § 3–402 comment, 2 U.L.A. 307–08 (1977)). "If one is primarily liable as a maker, jointly and severally [as was Rhyner, according to the terms of the note] it adds nothing to say one is liable all over again, and, in general, 'when a maker also signs a note as

a guarantor, the guaranty is surplusage.' " *Id.* at 749 (quoting *Ligran, Inc. v. Medlawtel, Inc.*, 86 N.J. 583, 432 A.2d 502 (1981) (citing additional cases)).

Second, it is our view that the same debt against an estate cannot be both secured and unsecured for purposes of AS 13.16.490. When a debt of the estate is secured, the rules expressed in the statute concerning exhaustion of security or valuing it must be followed.

The decision of the superior court is REVERSED and the cause REMANDED for further proceedings consistent with this opinion.[11]

---

**11.** We have considered the other arguments raised on appeal and conclude that they are without merit.