SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**Extech Building Materials, Inc. v. E&N Construction, Inc.** (A-28-24) (089720)

**Argued September 9, 2025 -- Decided December 2, 2025**

**JUSTICE FASCIALE, writing for a unanimous Court.**

In this appeal, the Court considers whether a single signature in a single agreement in which the signer binds a company as the principal debtor can simultaneously bind the signer in their personal capacity as guarantor.

To govern its sale and delivery of building materials to defendant E&N Construction, Inc. (E&N), plaintiff Extech Building Materials, Inc. (Extech) presented E&N with a two-page document entitled "CREDIT APPLICATION AND AGREEMENT." Two E&N representatives signed, including defendant Joaquim G. Ferreira, the purported president of E&N. The paragraph above the signature lines stated that the signers "DO PERSONALLY GUARANTEE UNCONDITIONALLY, AT ALL TIMES, . . . THE PAYMENT OF INDEBTEDNESS . . . OF THE WITHIN NAME[D] FIRM." Under each signature line, the pre-printed words "No Title" appeared. Accordingly, neither representative specified whether they signed the Credit Application as an E&N representative, individually, or both.

Extech supplied building materials pursuant to the parties' agreement, but E&N failed to remit payment. Extech filed suit against defendants. The trial judge found that the agreement did not "make[] it clear that [the signers are] responsible as guarantors for the debt of . . . [E&N]." The judge granted summary judgment in favor of Ferreira. Extech appealed. The Appellate Division reversed, determining that genuine issues of fact regarding the intentions of the parties precluded summary judgment. The Court granted certification. 260 N.J. 63 (2025).

**HELD:** A valid personal guaranty of a company's indebtedness requires the signer to unambiguously manifest their intent to be personally bound. There are multiple ways a corporate representative can unambiguously manifest an intent to personally guarantee an underlying agreement. Here, Ferreira did not unambiguously manifest an intent to personally guarantee the underlying corporate agreement.

1. A personal guaranty is an individual's promise to a third party to answer for a principal's debt or performance on an underlying contract, payable to the third party

1

only upon the principal's default or failure to perform.  A guaranty is fundamentally separate from the underlying contract, even if the two are written on the same paper or instrument or are contemporaneously executed.  But a personal guaranty is still a type of contract, and its enforceability therefore depends -- as with any contract -- on mutual assent between the parties.  New Jersey's Statute of Frauds also requires that any assumption of liability for the debt of another be in writing and signed by the party assuming liability.  N.J.S.A. 25:1-15.  Once formed, contracts of this character are to be construed according to the strictest interpretation of the law.  And as with all written agreements, any ambiguities in the language are interpreted most strongly against the entity which has prepared the form.  (pp. 9-10)

2.  The Court rejects Ferreira's argument that his single signature cannot simultaneously bind both E&N, as principal, and himself, as guarantor, explaining that New Jersey law has not imposed a bright-line two-signature requirement.  The Court also declines to impose such a requirement, holding instead that a valid personal guaranty of a company's indebtedness requires the signer to unambiguously manifest their intent to be personally bound.  An unambiguous manifestation of intent is required because a guaranty is a separate legal obligation that binds an individual who would otherwise be outside the scope of the underlying contract.  The demand for clarity in this context flows from the general rule presuming that agents of a disclosed principal intend by their signature on a contract to bind only the principal.  Such clarity also realizes the purpose of the Statute of Frauds as applied to personal guaranties.  See N.J.S.A. 25:1-15.  (pp. 10-16)

3.  To unambiguously manifest an intent to personally guarantee an underlying agreement, the representative may (1) execute a separate personal guaranty agreement; (2) sign the underlying agreement once as a corporate representative and again individually; or (3) sign the underlying agreement a single time, provided that the agreement explicitly states the individual intends their single signature to bind both the company and the representative individually.  The Court provides further guidance about each method.  Ultimately, it is the signer's intent that is dispositive, not the signature's technical form; technical form is instructive only insofar as it allows courts to discern the requisite intent.  Under longstanding legal principles governing personal guaranties, Ferreira did not unambiguously manifest an intent to personally guarantee the Credit Application.  (pp. 16-19)

**REVERSED.  The trial court's orders are REINSTATED.**

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, NORIEGA, and HOFFMAN join in JUSTICE FASCIALE's opinion.**

2

SUPREME COURT OF NEW JERSEY
A-28 September Term 2024
089720

Extech Building
Materials, Inc.,

Plaintiff-Respondent,

v.

E&N Construction Inc.,
Shawn Roney, ARC NJ,
LLC, Travelers Casualty
and Surety Company
of America, and Liberty
Mutual Insurance
Company,

Defendants,

and

Joaquim G. Ferreira,

Defendant-Appellant,

and

ARC NJ, LLC,

Third-Party Plaintiff,

v.

Elio Ferreira,

Third-Party Defendant.

1

On certification to the Superior Court,
Appellate Division.

Argued                          Decided
September 9, 2025          December 2, 2025

Zachary D. Wellbrock argued the cause for appellant (Anselmi & Carvelli, attorneys; Zachary D. Wellbrock and Marissa N. Kindberg, on the briefs).

Lisa J. Jurick argued the cause for respondent (Starr, Gern, Davison & Rubin, attorneys; Lisa J. Jurick and Jonathan J. Lerner, on the briefs).

JUSTICE FASCIALE delivered the opinion of the Court.

In this appeal, the parties dispute whether a corporate representative who executed an underlying contract that obligated the company to pay for building materials also agreed, in that same document, to personally guarantee the supplier payment for the company's indebtedness. The primary issue is whether a single signature in a single agreement in which the signer binds a company as the principal debtor can simultaneously bind the signer in their personal capacity as guarantor.

We hold that a valid personal guaranty of a company's indebtedness requires the signer to unambiguously manifest their intent to be personally bound. There are multiple ways a corporate representative can unambiguously

2

manifest an intent to personally guarantee an underlying agreement. The representative may (1) execute a separate personal guaranty agreement; (2) sign the underlying agreement once as a corporate representative and again individually; or (3) sign the underlying agreement a single time, provided that the agreement explicitly states their single signature binds both the company and the representative individually.

We conclude that defendant Joaquim G. Ferreira did not unambiguously manifest an intent to personally guarantee the underlying corporate agreement. We therefore reverse the Appellate Division's judgment and reinstate summary judgment in Ferriera's favor.

I.

A.

Plaintiff Extech Building Materials, Inc. (Extech) is a building materials supplier. Defendant E&N Construction, Inc. (E&N) is a construction company. To govern Extech's sale and delivery of building materials to E&N, Extech presented E&N with a two-page document entitled "CREDIT APPLICATION AND AGREEMENT" (Credit Application). Two E&N representatives signed the Credit Application: defendant Shawn Roney, the manager of E&N, who is not involved in this appeal; and Ferreira, the purported president of E&N.

3

The Credit Application contained six numbered paragraphs, located directly above the signature lines. The first five provisions, set in standard typeface, prescribed Extech's authority to (1) verify E&N's credit standing; (2) apply late fees for missed payments; (3) recover court costs and attorneys' fees in the event of collection proceedings; (4) adjust E&N's line of credit; and (5) receive notice if E&N changed its name. The sixth and final provision, demarcated by capitalized typeface, stated:

> 6. IN CONSIDERATION OF EXTECH BUILDING MATERIALS, ITS SUBSIDIARIES OR AFFILIATES EXTENDING CREDIT, WE JOINTLY AND SEVERALLY DO PERSONALLY GUARANTEE UNCONDITIONALLY, AT ALL TIMES, TO EXTECH, ITS SUBSIDIARIES OR AFFILIATES, THE PAYMENT OF INDEBTEDNESS OR BALANCE OF INDEBTEDNESS OF THE WITHIN NAME[D] FIRM. THIS GUARANTEE SHALL CONTINUE UNTIL 10 FULL BUSINESS DAYS AFTER GUARANTOR SENDS A WRITTEN REVOCATION OF THE GUARANTEE TO EXTECH.

Immediately following paragraph six, the agreement presented three signature lines, each prompting E&N's signatories to provide their printed name and signature, in addition to a witness's signature. Under each signature line, the pre-printed words "No Title" appeared. Accordingly, neither Roney nor Ferreira specified whether they signed the Credit Application as an E&N representative, individually, or both. The lines appeared as follows:

4

| Print Name _____ | Signature _____ | Witness _____ |
| | (No Title) | |
| Print Name _____ | Signature _____ | Witness _____ |
| | (No Title) | |
| Print Name _____ | Signature _____ | Witness _____ |
| | (No Title) | |

Roney and Ferreira each printed and signed their names, and both lines included a witness's signature.

Extech supplied building materials pursuant to the parties' agreement, but E&N failed to remit payment.

### B.

Extech filed a lawsuit against E&N, Roney, and Ferreira. Extech alleged that Roney and Ferreira were personally liable under the Credit Application for E&N's indebtedness of $1,016,627.65. Extech also sought damages against E&N.

In the course of discovery -- while written discovery remained incomplete and deposition notices for Ferreira, Roney, and a representative of Extech had been served but remained outstanding -- Extech filed a motion for summary judgment against Roney and Ferreira. Ferreira cross-moved for summary judgment seeking dismissal of the complaint against him, and Roney joined Ferreira's cross-motion.

The trial judge denied Extech's motion for summary judgment because discovery was incomplete and there existed genuine issues of material fact as

to whether E&N was obligated under the contract.  As to Ferreira and Roney's liability, the trial judge found that "a personal guarantee is a separate and distinct agreement" from a corporate contract and that "there's certainly no evidence to impose personal liability . . . without a separate and distinct obligation . . . that makes it clear that [Roney and Ferreira are] responsible as guarantors for the debt of . . . [E&N]."  The trial judge granted summary judgment in favor of Ferreira and dismissed the complaint against Roney.  Extech appealed to the Appellate Division.

The Appellate Division reversed the orders granting Ferreira summary judgment and dismissing Extech's complaint against Roney.  The appellate court rejected Ferreira's argument that his single signature could not bind both E&N and himself as a matter of law but determined that genuine issues of fact regarding the intentions of the parties precluded summary judgment.  As to Extech's motion for summary judgment, the Appellate Division affirmed the trial court's order denying the motion.

Only Ferreira filed a petition for certification, which we granted.  260 N.J. 63 (2025).

## II.

Ferreira contends that it is both legally and logically impossible for him and Roney to have signed the Credit Application in their personal capacities.

6

He insists that such a scenario would leave the underlying contract between Extech and E&N without a corporate representative. Ferreira argues that a single signature on one document cannot simultaneously bind an individual as guarantor and a company as obligor and that he is entitled to summary judgment given the absence of a second signature. Ferreira asserts that Ligran, Inc. v. Medlawtel, Inc., 86 N.J. 583 (1981), and Cruz-Mendez v. ISU/Insurance Services of San Francisco, 156 N.J. 556 (1999), impose a bright-line rule that requires a corporate representative sign twice -- once in a representative capacity and once individually -- to bind both the company and themselves as a personal guarantor. Ferreira argues further that the ambiguous guaranty language must be strictly construed against Extech.

Extech maintains that Ferreira and Roney's single signatures were capable of simultaneously binding both E&N and the two individuals as personal guarantors. Extech contends that there is no bright-line rule requiring separate signatures, nor should there be, because established contract law principles provide sufficient guidance for resolving any ambiguities through consideration of the circumstances and intention behind the signatures. Accordingly, Extech submits that Ferreira was not entitled to summary judgment.

## III.

### A.

We review de novo a trial court's grant or denial of a motion for summary judgment, "applying the same standard that governed the trial court's determination." Padilla v. Young Il An, 257 N.J. 540, 547 (2024). Summary judgment must be entered "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). Determining whether any genuine issues of material fact exist requires us "to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational fact finder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

### B.

As a general matter, "[c]ourts enforce contracts 'based on the intent of the parties, the express terms of the contract, surrounding circumstances and the underlying purpose of the contract.'" Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 118 (2014) (quoting Caruso v. Ravenswood Devs., Inc.,

8

337 N.J. Super. 499, 506 (App. Div. 2001)). "The judicial interpretive function is to consider what was written in the context of the circumstances under which it was written, and accord to the language a rational meaning in keeping with the expressed general purpose." Conway v. 287 Corp. Ctr. Assocs., 187 N.J. 259, 269 (2006) (quoting Atl. N. Airlines, Inc. v. Schwimmer, 12 N.J. 293, 302 (1953)).

"The plain language of the contract is the cornerstone of [a court's] interpretive inquiry," Barila v. Bd. of Educ. of Cliffside Park, 241 N.J. 595, 616 (2020), and "unambiguous contracts will be enforced as written unless they are illegal or otherwise violate public policy," Manahawkin Convalescent, 217 N.J. at 118 (quoting Leonard & Butler, P.C. v. Harris, 279 N.J. Super. 659, 671 (App. Div. 1995)). If "an ambiguity appears in a written agreement, the writing is to be strictly construed against the draftsman." Kotkin v. Aronson, 175 N.J. 453, 455 (2003) (quoting In re Miller's Estate, 90 N.J. 210, 221 (1982)).

A personal guaranty is an individual's promise to a third party to answer for a principal's debt or performance on an underlying contract, payable to the third party only upon the principal's default or failure to perform. See 38 Am. Jur. 2d Guaranty § 1 (2025) (Guaranty). A guaranty is fundamentally separate from the underlying contract, and its "independence is not affected by the fact

9

that both contracts are written on the same paper or instrument or are contemporaneously executed." Id. § 3. But it is still a type of contract, see Restatement (Third) of Suretyship & Guaranty § 7 cmt. a (Am. L. Inst. 1996), and its enforceability therefore depends -- as with any contract -- on mutual assent between the parties, Guaranty § 1. New Jersey's Statute of Frauds also requires that any assumption of liability for the debt of another be in writing and signed by the party assuming liability. N.J.S.A. 25:1-15.

Once formed, "contracts of this character are to be construed strictissimi juris" -- that is, according to the strictest interpretation of the law. Ferguson Carpet Co. v. Schottenfeld, 109 N.J.L. 539, 543 (E. & A. 1932). And as with all written agreements, any ambiguities in the language are "interpreted most strongly against the entity which has prepared the form." Nat'l Westminster Bank N.J. v. Lomker, 277 N.J. Super. 491, 499 (App. Div. 1994); see also Guaranty § 4.

Ferreira asserts that, under New Jersey law, his single signature cannot simultaneously serve in dual capacities -- as a representative of E&N and individually -- thereby binding both E&N, as principal, and himself, as guarantor. But his reliance on Ligran and Cruz-Mendez for that proposition is misplaced. In those cases, this Court did not expressly adopt or impose a bright-line rule whereby a corporate representative who executes an underlying

10

contract must also sign that agreement in his individual capacity if it contains a personal guaranty.

In Ligran, this Court examined a promissory note executed as a security deposit for a commercial lease, which the defendant signed both as company president on the front and individually as guarantor on the back. 86 N.J. at 585. The issue in Ligran centered on determining when the plaintiff's cause of action accrued -- at the creation of the note or at the time of breach -- not whether the defendant needed to sign twice to be bound as a guarantor. Ibid. In explaining how a guaranty of a negotiable instrument operates, we observed that, "[g]enerally, a guarantor is a different person from the maker or, if the same person, signs in different capacities when signing as maker and guarantor (e.g., an individual may sign as an officer of a corporate maker and also sign individually as a guarantor of the corporate obligation)." Id. at 589 (emphases added). That observation on general guaranty practice did not adopt or impose a bright-line rule or expressly hold that an individual could never sign in both corporate and individual capacities with a single signature.

Similarly, the dicta in Cruz-Mendez on which Ferreira relies does not adopt or impose a two-signature requirement. In distinguishing a surety contract -- whereby a surety promises the principal to pay a third party on the principal's behalf -- from a guaranty -- whereby a guarantor promises a third

11

party to pay on the principal's behalf, as Extech argues happened here -- we stated that a guaranty is "a separate contract" between the guarantor and the third party. 156 N.J. at 568. But, as described above, the fact that it is a discrete contractual agreement from the underlying contract -- "a separate contract," in other words -- does not automatically require that it be presented in a separate document. The word "separate" did not mean a second physical document containing the guarantor-creditor agreement, only that a guarantor-creditor agreement is conceptually and legally distinct from the underlying principal-creditor agreement.

C.

Having determined that New Jersey law has not imposed a bright-line two-signature requirement, we consider whether we should adopt such a rule today. General principles of agency law are instructive: In the corporate context, an officer is not personally liable on a contract between the corporation and a third party -- that is, the officer does not serve as a guarantor of the corporation's obligation -- simply by signing the contract in an organizational capacity or by virtue of a corporate position. Restatement (Third) of Agency § 6.01 cmt. d (Am. L. Inst. 2006). The officer may, however, personally guarantee the company's obligation if both the officer and the third party so agree. Ibid.; Looman Realty Corp. v. Broad St. Nat'l Bank

12

of Trenton, 32 N.J. 461, 476 (1960); 7 Fletcher Cyclopedia of the Law of Corporations § 3005 (Sept. 2025 update) (Fletcher) ("The rules governing the sufficiency of signatures of officers of a corporation to bind the corporation and the effect of the signatures as making the officers personally liable, are largely governed by the law of agency.").

"The manner in which an agent signs a document is . . . relevant to establishing whether the agent has manifested assent to be a party." Restatement (Third) of Agency § 6.01 cmt. d.  But so too is the "language in the agreement itself that names the officer individually as a party," as well as other indicia of intention surrounding the "nature of the parties' contract." Ibid.  Specifically, the Reporter's Notes to this section of the Restatement (Third) highlight that "[t]he contents of the body of an agreement are relevant to whether an officer has individual liability."  Id. § 6.01 Reporter's Notes cmt. c; see also Sadler v. Young, 78 N.J.L. 594, 596 (E. & A. 1910) (holding that a corporate officer was personally liable because "[t]he body of the contract provide[d] that he, not the corporation, shall pay the commission, and it [was] signed by him personally, and not as the agent or representative of the corporation").  Thus, although unlikely, "[i]t is possible for an agent to obligate both themselves and the principal on whose behalf the agent is acting

13

with only one signature, so long as other language found in the contract expresses such an intent." 7 Fletcher § 3034.

Properly framed, then, the dispositive question is not whether an officer's single signature could serve in dual capacities -- binding both corporation and individual -- but whether the officer intended for it to do so. Special attention must be given to ascertaining intent when a personal guaranty is purported to be created within an underlying contract because the agreements are fundamentally distinct. See Guaranty § 3. Thus, to answer this question, we reiterate two key points.

First, we have long held the maxim strictissimi juris applies to interpreting guaranties. See, e.g., John H. Lyon & Co. v. Plum, 75 N.J.L. 883, 886 (E. & A. 1908). Consistent with this, for a guaranty to be valid in the first place, it is foundational that "[t]he law will subject a man, having no interest in the transaction, to pay the debt of another, only when his undertaking manifests a clear intention to bind himself for that debt." Russell v. Clark's Ex'rs, 11 U.S. (7 Cranch) 69, 92 (1812) (Marshall, C.J.). For this reason, "[i]t is the duty of the individual, who contracts with one man on the credit of another, not to trust to ambiguous phrases and strained constructions, but to require an explicit and plain declaration of the obligation he is about to assume." Ibid.

14

Second, New Jersey's Statute of Frauds applies to personal guaranties. See N.J.S.A. 25:1-15. To satisfy the Statute of Frauds, a writing must "be sufficient to identify the parties to the contract." Restatement (Third) of Agency § 6.01 cmt. c. The Statute of Frauds is intended to "prescrib[e] reliable methods for proving an authentic contract," and because a personal guaranty constitutes a distinct agreement, binding a new party, it is essential that there be no uncertainty as to the personal guarantor's manifestation of intent to enter into the guaranty. Moynihan v. Lynch, 250 N.J. 60, 76 (2022); see also Salzman Sign Co. v. Beck, 176 N.E.2d 74, 76 (N.Y. 1961) (holding that the New York Statute of Frauds requires direct and explicit evidence of personal guarantor's actual intent).

IV.

A.

Based on our review of the relevant contract and agency principles, we decline to adopt a bright-line rule requiring two separate signatures. Instead, we hold that a valid personal guaranty of a company's indebtedness requires the signer to unambiguously manifest their intent to be personally bound. An unambiguous manifestation of intent is required because a guaranty is a separate legal obligation that binds an individual who would otherwise be outside the scope of the underlying contract. The demand for clarity in this

15

context flows from the general rule "presuming that agents of a disclosed principal intend by their signature on a contract to bind only the principal." 3A Fletcher § 1118. Such clarity also realizes the purpose of our Statute of Frauds as applied to personal guaranties. See N.J.S.A. 25:1-15.

There are multiple ways a corporate representative can unambiguously manifest an intent to personally guarantee an underlying agreement. The representative may (1) execute a separate personal guaranty agreement; (2) sign the underlying agreement once as a corporate representative and again individually; or (3) sign the underlying agreement a single time, provided that the agreement explicitly states the individual intends their single signature to bind both the company and the representative individually. We provide further guidance about each method.

## 1.

The most obvious way to clearly manifest intent that a corporate representative will personally assume liability for the company's indebtedness is for that individual to execute two distinct, separate contracts. That is, in one document, the corporate representative signs an agreement, on behalf of the company, that sets forth the mutual obligations of the company and the party with which the company is contracting. And in another document, the corporate representative signs a separate guaranty assuming personal liability

16

for the company's indebtedness to the party with which the company contracted.  Given that a guaranty is a separate undertaking from the underlying contract, proceeding in this manner is the most effective way to avoid any ambiguity as to the signer's intended capacity.

2.

Another method is to include within a single document two signature lines or sets of signature lines -- one for the corporate officer to sign on behalf of the company, and one for the officer to sign in an individual capacity. Authorities highlight that this may be the most common means to simultaneously create an underlying contract and a personal guaranty in the event of nonperformance of the contract.  See, e.g., 7 Fletcher § 3034 ("The general practice where individual liability of an officer signing a corporate contract is intended is for the officer to sign twice, once as corporate officer and again as an individual."); Salzman, 176 N.E.2d at 76 ("[W]here individual responsibility is demanded the nearly universal practice is that the officer signs twice once as an officer and again as an individual."); Guaranty § 17 (observing that "by signing the contract twice, the officer executing the contract for his corporation clearly manifests his intent to assume personal liability").

17

### 3.

Finally, "[i]t is possible for an agent to obligate both themselves and the principal on whose behalf the agent is acting with only one signature, so long as other language found in the contract expresses such an intent."  7 Fletcher § 3034.  Because this final method does not inherently suggest the signer intended to manifest a dual role, in contrast to the first two methods described, it requires the highest level of clarity in setting forth the obligations to which the single signature binds the signer.  The contract language must directly evince the signer's dual intent by unambiguously expressing an assumption of personal liability in addition to establishing the underlying corporate commitment.  It must explicitly delineate the capacities in which the signer acted.  A single signature could manifest the signer's intent to simultaneously act in dual capacities if, for example, the agreement predominantly features a personal guaranty clause and clearly states that the signer is signing both in a representative capacity and in their individual capacity.  Absent those methods, however, a single signature will rarely suffice to establish the mutual assent required to personally guarantee a company's indebtedness.

### B.

In sum, New Jersey has never adopted a bright-line two-signature requirement to impose personal liability on a corporate representative.  We

18

clarify that it is the signer's intent that is dispositive, not the signature's technical form; technical form is instructive only insofar as it allows courts to discern the requisite intent. Applying longstanding legal principles governing personal guaranties, we conclude that Ferreira did not unambiguously manifest an intent to personally guarantee the Credit Application. Ferreira did not execute a separate personal guaranty agreement; he did not sign the underlying agreement once as a corporate representative and again individually; and the Credit Application does not explicitly state that his single signature binds both E&N and himself individually. Accordingly, we reinstate summary judgment in Ferreira's favor and summarily reinstate the order dismissing the complaint against Roney.

V.

The judgment of the Appellate Division is reversed.


CHIEF JUSTICE RABNER and JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, NORIEGA, and HOFFMAN join in JUSTICE FASCIALE's opinion.

19